**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DOUGLAS BRUCE, an individual,

    Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER, a
municipal government within the State of
Colorado; STERLING CONSULTING
CORPORATION, a Colorado corporation;
STATE OF COLORADO; FAIRFIELD &
WOODS, P.C., a Colorado professional
corporation; MACHOL & JOHANNES
LLC, a Colorado limited liability
corporation,

    Defendants - Appellees.

No. 21-1388

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-02099-RBJ)**
_____

Aaron C. Garrett, Nonprofit Legal Services of Utah, Salt Lake City, Utah, for Plaintiff –
Appellant.

Edward J. Gorman, Assistant City Attorney, Denver City Attorney's Office (Philip J.
Weiser, Attorney General, Amy C. Colony, Senior Assistant Attorney General, and
Lauren Davison, Assistant Attorney General, Colorado Attorney General's Office; John
M. Tanner, Fairfield and Woods, P.C.; Paige A. Arrants, Assistant City Attorney, Denver
City Attorney's Office; and Jacques A. Machol, III, Machol & Johannes, LLC, with him
on the brief), Denver, Colorado, for Defendants – Appellees.
_____

Before **McHUGH**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

Douglas Bruce sued the City and County of Denver ("Denver") and others (collectively, "Appellees") in federal district court for alleged constitutional violations arising from a Colorado state court's determination that Mr. Bruce's liens on several properties were inferior to Denver's liens. The district court dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.[1] Mr. Bruce contends that the *Rooker-Feldman* doctrine does not apply because he was not a party to the state court litigation. We disagree and affirm the dismissal.

## I.    BACKGROUND

Mr. Bruce formerly owned several multi-family residential properties in Denver, Colorado, known here as the "Lipan Property" and the "York Property" (collectively, the "Properties").[2] In 1997 and 2003, respectively, Mr. Bruce

_____

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (holding lower federal courts lack jurisdiction to reverse or modify state court judgments); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (explaining federal district courts may not review constitutional claims that are inextricably intertwined with state court decisions).

[2] Although we accept the complaint's uncontroverted facts about the Properties' history as true for purposes of this motion, we do not confine our review to the facts in the complaint when evaluating a factual challenge to subject matter jurisdiction on a motion to dismiss. *Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005) (explaining that, when addressing a factual challenge to subject matter jurisdiction, the court has wide discretion to consider evidence outside the complaint bearing on the court's jurisdiction).

transferred the parcels to Tele Comm Resources LP ("Tele Comm") in exchange for promissory notes secured by trust deeds. Mr. Bruce alleges Tele Comm later deeded the Properties, subject to his encumbrances, to an individual who then transferred them back to Tele Comm. Mr. Bruce claims the final transfer was invalid because Tele Comm lacked notice that the deeds had been re-recorded in its name, so the other individual remained the Properties' owner despite Tele Comm being the owner of record.

We first examine the administrative proceedings against Tele Comm that led to Denver obtaining liens on the Properties before turning to the state court proceedings Denver initiated to collect the funds Tele Comm owed (the "State Court Litigation"). We then provide an overview of Mr. Bruce's federal complaint and the district court's dismissal of the complaint under the *Rooker-Feldman* doctrine.

### A.    State Procedural History

### 1.    Administrative Proceedings

Records from Denver's Office of Community Planning and Development[3] (the "Department") reflect that by 2005, the York Property was vacant and had been

---

[3] These records were later filed in the State Court Litigation and then submitted to the district court, and they are in the appendix submitted on appeal. In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979). However, "the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1265 n.24 (quotation marks and brackets omitted).

3

placed under Department supervision for violations of municipal ordinances forbidding neglected and derelict properties. At a 2010 administrative hearing, a city inspector testified about ongoing violations and the failure of Tele Comm's representative, Mr. Bruce, to submit a satisfactory remediation plan. The hearing officer noted that Mr. Bruce had participated in prior interactions with the Department and raised objections, but neither Mr. Bruce nor any other representative of Tele Comm appeared at the hearing. The hearing officer imposed fines of up to $999 per day on Tele Comm and granted Denver's request for appointment of a receiver pursuant to the Denver Revised Municipal Code ("DRMC" or the "Municipal Code") §§ 10-139(k)[4] and 10-140(2).[5]

Department records show that Tele Comm failed to appear at another hearing in 2014, this time about the Lipan Property. Denver presented evidence that the Lipan Property had changed hands multiple times among Mr. Bruce, Tele Comm, and another individual, allegedly to conceal ownership and to avoid enforcement of ordinances on neglected and derelict buildings. The hearing officer found the property to be in violation of the Municipal Code and imposed fines of up to $999

---

[4] As of 2010, DRMC § 10-139(k) allowed a civil penalty of up to $999 per day for each day any building or property was found to have violated ordinances prohibiting neglected or derelict buildings or properties.

[5] As of 2010, DRMC § 10-140(2) authorized appointment of a receiver to abate a violation of ordinances prohibiting neglected or derelict buildings or properties if the owner failed to abate a violation or comply with abatement deadlines.

4

per day up to 110% of the actual property value. The hearing officer also noted

existing unpaid fines of over $180,000 and imposed further fines and penalties for

other violations.

**2.      State Court Litigation**

Denver sued Tele Comm repeatedly to obtain judgments against it for unpaid

fines and penalties. Mr. Bruce's federal complaint arises from a set of cases

consolidated in 2015.[6] Among Tele Comm's asserted defenses in the State Court

Litigation was that Tele Comm did not own the Properties.

Mr. Bruce participated in the State Court Litigation on his own behalf as a

lienholder. He made over a dozen filings in the case and participated in several

hearings.[7] We now review the aspects of the State Court Litigation relevant to

Mr. Bruce's federal complaint.

*a.      Mr. Bruce's objection to summary judgment and receivership*

In 2016, Denver moved for summary judgment and for the appointment of a

receiver to manage the disposition of the Properties. The state court granted both

motions over Tele Comm's objection. The court explained that Tele Comm should

---

[6] Appellee Machol & Johannes, LLC represented Denver.

[7] These hearings concerned a contempt citation, not the merits of the State Court Litigation or Mr. Bruce's claim in the receivership. They are relevant to our analysis insofar as Mr. Bruce argued he was not subject to the state court's jurisdiction because he was not a named party. At the final hearing, the judge stated, "[T]he Court previously found that Mr. Bruce had submitted himself to the jurisdiction of the Court by his filings [and] his . . . appearances. So I just wanted to make sure the record was clear about that." App. Vol. 2 at 185.

have raised its defenses at the administrative hearing at which it failed to appear. The court appointed Sterling Consulting Corporation (the "Receiver") to oversee the management and disposition of the Properties.[8]

Several months after the state court granted summary judgment against Tele Comm and after the Receiver was appointed, Mr. Bruce filed an objection to the appointment of a receiver, submitted a "partial" claim "under protest," and requested a continuance. App. Vol. I at 109. He explained that he had never received any papers in the case other than an invoice from the Receiver and noted he was not a named defendant. He alleged he had tried to foreclose on the Lipan Property earlier that year and viewed the State Court Litigation as an "attempt to pre-empt the equity in his two promissory notes," which he believed had priority over Denver's liens. App. Vol. 1 at 111. Mr. Bruce argued he could not defend himself adequately against what he viewed as an unconstitutional effort to deprive him of his property interest without due process because he was in prison at the time of the litigation.

The state court denied Mr. Bruce's motion, explaining this was the first time it had been notified Mr. Bruce might have an interest in the Properties and his imprisonment would not have prevented earlier participation in the case. The state court found Mr. Bruce's objection to the receivership untimely, denied a continuance, and instructed Mr. Bruce to file his claims with the Receiver.

---

[8] Appellee Fairfield & Woods, P.C. represented the Receiver.

      b.      *Mr. Bruce's motion to enjoin sale of Properties and dismiss the case*

In 2017, Mr. Bruce filed a motion requesting that the court enjoin the Receiver's sale of the Properties and dismiss the case. He accused the Receiver and the court of an illegal scheme and the Receiver of fraudulently paying himself inflated amounts out of Mr. Bruce's equity. He argued that the municipal ordinances giving priority to Denver's liens were unconstitutional because they were enacted after his trust deeds were recorded. Finally, Mr. Bruce argued that Denver's fines were unjustified, unlawful, and motivated by personal hatred because of his past political activism. The state court docket does not indicate whether the state court ruled on Mr. Bruce's motion, but the court did not enjoin the sale of the Properties or dismiss the case as Mr. Bruce requested.

      c.      *Mr. Bruce's objection to determination of lien priority*

In 2018, Denver filed a "Motion to Determine Priority of Liens," to which Mr. Bruce filed an objection. Mr. Bruce renewed several motions he claimed the court had ignored, including motions to dismiss the receivership and to dismiss the case with prejudice. He stated he was "still not a party," claimed he was not being allowed to defend his interests, and accused the state court and Denver of acting unlawfully and unconstitutionally. *Id.* at 140.

In its Order Determining Priority of Liens, the state court explained that Denver had lawfully assessed the penalties against Tele Comm under DRMC § 10-139. The court noted that DRMC § 10-140 allowed Denver to bring an action for a receiver for abatement of a neglected or derelict building and DRMC § 10-140(4)

7

converted "all costs, expenses and fees of the receivership, and penalties assessed against the owner" for violations of the relevant provisions into liens on the Properties. App. Vol. 1 at 154. The court explained that § 10-140(4) made such liens "superior to all other liens of record, except liens for general taxes and special assessments." *Id.*

In its order, the state court acknowledged that Mr. Bruce held trust deeds on the Properties. The court stated it had previously ordered Mr. Bruce's claims disallowed in the receivership and Mr. Bruce had not sought reconsideration of that order within the allotted thirty-five days. The court also explained why it rejected Mr. Bruce's arguments. The court determined that the relevant sections of the Municipal Code had been enacted before Mr. Bruce recorded his trust deeds, so Mr. Bruce should have been on notice of the priority of Denver's liens. Reviewing relevant case law, the court concluded that statutes giving priority to municipal liens were valid if they were enacted before the recorded trust deeds and if the penalties underlying the liens were for violations of ordinances advancing public health, safety, and welfare. The court determined that Denver's liens met both criteria and were therefore superior to Mr. Bruce's. The state court authorized the sale of the Properties to pay the penalty assessment liens and the 10% penalty for the cost of the assessment, as well as interest to Denver, the costs of the receivership, and attorney fees and expenses.

8

    *d.      Denver's motion to add Mr. Bruce as a defendant*

The docket originally referred to Mr. Bruce as "Non-Party" on his filings. In 2018, Denver moved unsuccessfully to add Mr. Bruce as a party defendant. Although the court denied the motion, it had already begun listing "Douglas Bruce" as the "Party" making filings prior to Denver's motion. Under "Party Information," the docket listed Mr. Bruce as an "Other Interested Party." *Id.* at 101.

    *e.      Mr. Bruce's objections to acts of the Receiver*

In 2018, Mr. Bruce objected to the sale of the Lipan Property, but the state court confirmed the sale. He later objected to the sale of the York Property, but the sale appears to have fallen through on its own. He continued to file objections to at least two more of the Receiver's motions in late 2018 and early 2019, and filed various other letters and documents. The court granted the Receiver's motions over Mr. Bruce's objections.

    *f.      State court's certification of orders for appeal*

The Receiver filed a motion to certify as final the Order Determining Priority of Liens and the sales of the Properties. In its motion, the Receiver stated, "The Receiver has conferred with all parties to this action. All parties support this motion except Mr. Bruce, who opposes it." *Id.* at 168. The Receiver expressed concern that (1) Mr. Bruce had indicated he "intends to continue to litigate this matter forever," and (2) if the orders were not appealable until the entire case was resolved then the Receiver might be without funds to defend the appeal. *Id.* at 169. The Receiver explained the orders were certified as final, and "if Mr. Bruce intends to appeal, he

will have to do so immediately. If he does not, all appeals will be waived, and it will be much easier to wrap up the Estate." *Id.* at 170. Mr. Bruce did not file any response, the state court certified the orders as final, and Mr. Bruce never appealed them.

## B.    Federal Procedural History

### 1.    Complaint

After the completion of the State Court Litigation, Mr. Bruce filed a federal complaint. At the heart of Mr. Bruce's complaint is his contention that his trust deeds should be given priority over Denver's liens. He challenges Denver's ordinances allowing Denver to levy hefty fines and penalties and then assert priority over earlier-filed liens, claiming the ordinances do not advance any legitimate public purpose and exist as a method for Denver and other Appellants to enrich themselves at the expense of property owners and prior lienholders. Mr. Bruce claims damages of at least $7 million.

#### a.    Constitutional claims (42 U.S.C. § 1983)

Mr. Bruce asserts four constitutional claims against Denver and Colorado under 42 U.S.C. § 1983. These include takings, denial of procedural due process, and denial of substantive due process under the Fifth and Fourteenth Amendments, as well as excessive fines under the Eighth and Fourteenth Amendments. In all these claims, Mr. Bruce alleges that Denver maintains unconstitutional policies, practices, and ordinances through which it issues excessive or arbitrary fines against real property and then places any such lien ahead of those held by others. Mr. Bruce

10

further contends that Colorado actively participated in these constitutional violations "through its judicial branch and the employment of judicial officers," whose "explicit consent and affirmative actions" allowed Denver to enforce its unconstitutional laws. *Id.* at 18, 19, 21, 22. In his complaint, Mr. Bruce states that Colorado "permitted the action to proceed in this fashion and in fact actively encouraged the same through the decisions of the judges who oversaw the State Court Litigation." *Id.* at 13.

Mr. Bruce also makes a § 1983 conspiracy claim against all Appellees (Claim 6). He alleges Appellees reached an agreement to (1) proceed in the State Court Litigation against Tele Comm, rather than the alleged true owner, knowing Tele Comm had neither the resources, the incentive, nor the ability to defend against Denver's claims; (2) deny Tele Comm's right to appear and defend its interest by claiming it had to be done through counsel;[9] (3) deny Mr. Bruce's right to appear and defend his interests by arguing against making Mr. Bruce a party to the State Court Litigation; (4) use the State Court Litigation to sell the Properties and keep the proceeds for themselves; and (5) time the State Court Litigation to transpire when he was in prison. Mr. Bruce suggests Appellees were motivated by a desire to retaliate against him for his past political activism.

---

[9] Colorado law requires limited partnerships to be represented by counsel if the amount in controversy exceeds $15,000. Colo. Rev. Stat. § 13-1-127(1)(e), (2)(a).

11

*b.      Breach of fiduciary duty*

Mr. Bruce claims the Receiver breached its fiduciary duty by committing waste for its own benefit in the management of the receivership and failing to treat his claims fairly and pay what was owed to him. He alleges the Receiver baselessly treated Mr. Bruce's trust deeds as fraudulent or illegitimate and lied in order to void them; prevented Mr. Bruce from foreclosing on the Lipan trust deed; and otherwise worked for the Receiver's own benefit.

**2.      Dismissal**

In two separate motions, Appellees moved to dismiss for lack of jurisdiction under the *Rooker-Feldman* doctrine. Mr. Bruce responded that the *Rooker-Feldman* doctrine did not bar his suit because he was not a party to the State Court Litigation.

The district court disagreed with Mr. Bruce, determining he was a "party" for purposes of the *Rooker-Feldman* doctrine because he had a reasonable opportunity to, and did, raise his claims in the State Court Litigation and the remedies he sought would be available only by effectively undoing the state court judgment. The district court concluded it did not have jurisdiction over Mr. Bruce's claims and dismissed the complaint without prejudice.

Mr. Bruce timely appealed.

## II.      DISCUSSION

Mr. Bruce challenges the district court's dismissal of his complaint, arguing the *Rooker-Feldman* doctrine does not bar his federal suit because he was not a party to the State Court Litigation. "We review the district court's dismissal for lack of

12

subject matter jurisdiction *de novo*, and any factual findings relevant to the court's jurisdiction for clear error." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). We disagree with Mr. Bruce and affirm the district court's dismissal of his complaint.

### A.    The Rooker-Feldman *Doctrine*

The *Rooker-Feldman* doctrine[10] prevents lower federal courts from exercising jurisdiction "over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) (explaining the *Rooker-Feldman* doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court"). This reflects Congress's decision to locate federal appellate jurisdiction over state court judgments exclusively in the Supreme Court. *Exxon Mobil*, 544 U.S. at 283 (citing 28 U.S.C. § 1257; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

---

[10] The doctrine is named for *Rooker*, 263 U.S. 413 (holding lower federal courts lack jurisdiction to reverse or modify state court judgments) and *Feldman*, 460 U.S. 462 (explaining federal district courts may not review constitutional claims that are inextricably intertwined with state court decisions). After several decades of expansion of the doctrine in lower federal courts, the Supreme Court narrowed it to its current form in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

The *Rooker-Feldman* doctrine recognizes a jurisdictional bar on lower federal courts' review of claims where (1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment. *Id.* at 284. Where these factors exist, we lack subject matter jurisdiction. *See Lance*, 546 U.S. at 465.

Although the *Rooker-Feldman* doctrine represents a firm jurisdictional bar, it is narrow in scope. *See id.* at 464 ("[O]ur cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule." (citing *Exxon Mobil*, 544 U.S. at 292)). It generally does not bar a suit by a federal-court plaintiff who was not a party in the state court litigation, nor does it bar a claim that does not seek to modify or set aside a state court judgment. *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111–12 (10th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Oct. 12, 2000) (holding *Rooker-Feldman* did not bar claim for declaration of adoption laws' unconstitutionality where plaintiff had not been a party to adoption proceeding and mounted only a general challenge to the validity of state adoption laws); *cf. Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174–76 (10th Cir. 2018) (explaining the doctrine does not bar a federal claim "just because it could result in a judgment inconsistent with a state-court judgment"); *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006) ("*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is,

14

claims that do not rest on any allegation concerning the state-court proceedings or judgment.").

### B.    Analysis

We first address Mr. Bruce's contention that the *Rooker-Feldman* doctrine does not bar his federal lawsuit because he was not a party to the State Court Litigation. We conclude that Mr. Bruce's status in the State Court Litigation does not prevent application of the *Rooker-Feldman* doctrine. We then evaluate whether the *Rooker-Feldman* doctrine bars his claims and conclude that it does.

### 1.    Whether Mr. Bruce's Party Status in the State Court Litigation Prevents Application of the *Rooker-Feldman* Doctrine

As a general rule, the *Rooker-Feldman* doctrine does not bar a suit by a federal court plaintiff who was not a party to the state court judgment. *See Lance*, 546 U.S. at 465 (rejecting application of *Rooker-Feldman* doctrine to non-parties who were in privity with a party); *Mo's Express*, 441 F.3d at 1234–37 (concluding *Rooker-Feldman* doctrine did not bar suit by plaintiffs who were "not parties, they were not bound by the judgment, and they were neither predecessors nor successors in interest to the parties" in the state court litigation, even if they had interests identical to those of a party). The underlying rationale for this general rule is that a federal court cannot be said to be entertaining an appeal from a state court judgment if the individual bringing the challenge is not one who could ordinarily appeal that judgment. *See Lance*, 546 U.S. at 465 (determining *Rooker-Feldman* doctrine did not apply where federal plaintiffs had not participated in state court proceeding and thus were not in a

15

position to appeal it (citing *Karcher v. May*, 484 U.S. 72, 77 (1987) ("[T]he general rule [is] that one who is *not a party or has not been treated as a party* to a judgment has no right to appeal therefrom." (emphasis added)))); *cf. Rodrigues (Orozco)*, 226 F.3d at 1109 (explaining *Rooker-Feldman* doctrine would not apply to non-parties who had not litigated their claims in the action).

Mr. Bruce maintains that the *Rooker-Feldman* doctrine does not bar his claims because he was not a party to the State Court Litigation.[11] Mr. Bruce points to the state court's refusal to name him a defendant as preventing application of the doctrine.[12] But under the *Rooker-Feldman* doctrine, the question is whether a federal claimant seeks to appeal a state court judgment that the claimant could have appealed in state court, not whether the federal claimant was listed as a party on a state court docket. *See Dorce v. City of New York*, 2 F.4th 82, 105 (2d Cir. 2021) (holding the doctrine barred the federal claim of former owners of property foreclosed in an *in rem* proceeding); *id.* at 103 n.24 (rejecting argument that only named parties are

---

[11] The state court arguably did name Mr. Bruce a "party" to the lawsuit. The state court docket in the record includes an entry for Mr. Bruce under "Party Information." App. Vol. 1 at 101. Under "Party Name" the docket states, "Douglas Bruce"; the "Party Type" is "Other Interested Party"; and the "Party Status" is "Active." *Id.* Although some of Mr. Bruce's early filings were labeled as being filed by a "Non-Party," *id.* at 96, as of early 2018, the docket listed Mr. Bruce as the "Filing Party," *id.* at 83.

[12] It is unclear whether Colorado procedural rules would have allowed the state court to name Mr. Bruce a defendant. Colorado Rule of Civil Procedure 66(d)(2) requires the defendants in a receivership suit to include "the current owner of the property as shown by the records of the clerk and recorder, and any other person then collecting the rents and profits as a result of that person's lien."

subject to *Rooker-Feldman* doctrine). The axiom that the doctrine generally applies to the claims of those who were parties in the prior state proceeding does not reflect a requirement; it reflects the reality that the doctrine usually affects such litigants because they are typically the ones bound by the state court judgment and would attempt to undo it. *Lance*, 546 U.S. at 465. But this is not always true.

A claimant in a receivership proceeding, although neither plaintiff nor defendant, is equally bound by a state court judgment and would have a similar right to and interest in appealing it. *See* Ralph Ewing Clark, 3 Clark on Receivers §§ 646 and 649(b) (3d ed. 1959) (explaining that a claimant in a receivership becomes a party to a proceeding ancillary to that between the plaintiff and defendant in which the claimant may challenge the demands of other creditors, assert its own defenses, seek review of the receiver's decisions by the court, and appeal to the reviewing court); *cf. Belknap Sav. Bank v. Lamar Land & Canal Co.*, 64 P. 212, 215–16 (Colo. 1901) (referring to bondholders with interests in property under receivership as "parties" to the "ancillary proceeding of the receivership"). Mr. Bruce had a right to submit his claim for adjudication and he did so. The state court adjudicated the claim with input from and participation by Mr. Bruce; it acknowledged his liens, evaluated his arguments, explained how the law applied to the facts to justify its determination that Denver's liens took priority over his, and addressed his challenge to the validity of the law. Mr. Bruce also had a right to appeal the state court's rulings in state

17

court.[13] Mr. Bruce is materially indistinguishable from a party to the State Court Litigation for *Rooker-Feldman* purposes and a lower federal court has no more jurisdiction to entertain such an appeal than one brought by a named party.

Mr. Bruce's argument that the *Rooker-Feldman* doctrine should not apply because he was "excluded from participating in the State Court Litigation and ignored by the state court," Appellant's Br. at 15, is both incorrect in its premise and an inaccurate representation of the record. A party's ability to participate in the state court litigation does not dictate whether *Rooker-Feldman* applies. *See Shelby Cnty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840–41 (8th Cir. 2017) (concluding that a federal litigant's ability to have intervened in the state court action was relevant to preclusion, not to the *Rooker-Feldman* doctrine, under the Supreme Court's narrowing of the doctrine in and after *Exxon Mobil*). Even if such a consideration were relevant, Mr. Bruce had a full and fair opportunity to participate in the State Court Litigation. Mr. Bruce filed a claim with the Receiver, motions on which the state court ruled, and objections that the state court considered. The state court did not ignore Mr. Bruce or refuse to allow him to participate; it just disagreed with him.

---

[13] At oral argument, counsel for Mr. Bruce expressed doubt that Mr. Bruce had a right to appeal the state court judgment. However, counsel eventually conceded Mr. Bruce had such a right. Indeed, the state court granted Denver's motion to certify its orders as final to enable Mr. Bruce to appeal more quickly. App. Vol. 1 at 167–71. *See* 3 Clark on Receivers § 646 (explaining that a disappointed claimant in a receivership proceeding may appeal the court's decisions).

In an effort to show why his claims survive the *Rooker-Feldman* doctrine, Mr. Bruce points to *Dorce*, 2 F.4th 82. In *Dorce*, former property owners brought a § 1983 due process challenge to the foreclosure of their buildings for non-payment of property taxes on the basis that they received inadequate notice of the *in rem* proceedings. 2 F.4th at 92. The Second Circuit held that the *Rooker-Feldman* doctrine barred the claim, explaining that their ownership gave them a right to participate in the proceedings. *Id.* at 104. Mr. Bruce tries to distinguish *Dorce* on the basis that it was an *in rem* proceeding so "the owners had the chance to participate in the state court litigation through their ownership of the real estate at issue." Appellant's Br. at 15; *see also* Reply at 4–5. But receivership proceedings are *quasi in rem* and, like *in rem* proceedings, allow parties not named in the suit to have their interests adjudicated and to appeal. *See* 1 Clark on Receivers §§ 46, 70, 289(f). Furthermore, the Second Circuit applied the doctrine even though the plaintiffs had not participated in the state court proceedings because their ownership gave them a right to do so. Mr. Bruce not only had such a right but actively exercised it. Far from suggesting the *Rooker-Feldman* doctrine should not apply, *Dorce* supports applying it here.

In sum, Mr. Bruce's status as a non-defendant in the State Court Litigation does not prevent application of *Rooker-Feldman*'s jurisdictional bar.

**2.       Whether the *Rooker-Feldman* Doctrine Bars Mr. Bruce's Claims**

Having concluded that the nature of Mr. Bruce's participation in the State Court Litigation does not prevent application of the *Rooker-Feldman* doctrine, we now evaluate whether the doctrine bars his claims. We conclude that it does.

Attempts to recast state court losses as deprivations of constitutional rights do not overcome the *Rooker-Feldman* jurisdictional bar. *See Campbell v. City of Spencer*, 682 F.3d 1278, 1284–85 (10th Cir. 2012) (explaining the doctrine bars a § 1983 claim where "an element of the claim is that the [state] judgment was wrongful"); *see also Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007); *Market v. City of Garden City*, 723 F. App'x 571, 574 (10th Cir. 2017) (unpublished) (holding doctrine barred § 1983 claim where "for [plaintiff] to win, the municipal court's judgment had to be wrong"). The doctrine forbids review of state judgments "based on the losing party's claim that the state judgment itself violates the loser's federal rights," *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994), or based on a claim that "a state court violated the Constitution by giving effect to an unconstitutional state statute," *Howlett v. Rose*, 496 U.S. 356, 369–70, n.16 (1990).

Mr. Bruce makes just such an attempt. His alleged injuries arose from, and are inseparable from, the state court judgment. He alleges that Denver issued excessive fines against Tele Comm and enacted/enforced an ordinance giving its own liens priority, and that the state court ignored him. But none of these allegedly unconstitutional acts plausibly injured Mr. Bruce until the state court upheld the fines, adjudicated the liens, and ordered the sale of the Properties and the distribution

of funds. Mr. Bruce objected to all these acts in the State Court Litigation and had a right to appeal to seek relief for injuries from these acts. Tellingly, Mr. Bruce now seeks monetary relief that would directly compensate him for losses caused by the state court's determination of lien priority and other decisions, which would effectively undo those decisions. This is precisely the relief the *Rooker-Feldman* doctrine says lower federal courts are powerless to provide. *Cf. Rodrigues (Orozco)*, 226 F.3d at 1105–07 (determining the doctrine did not bar a request for a declaration of adoption law's unconstitutionality where plaintiff did not ask the federal court to undo the adoption).

Mr. Bruce's claim for breach of fiduciary duty fares no better. He alleges the Receiver converted Mr. Bruce's property to itself "through the imposition of exorbitant receivership fees, and to Denver through Denver's retention of the remaining sale proceeds." App. Vol. 1 at 23. But the Receiver carried out the state court's orders; without the state court's orders, there was no injury. *See McDonald v. Arapahoe Cnty.*, 755 F. App'x 786, 789–90 (10th Cir. 2018) (unpublished) (holding *Rooker-Feldman* barred Fifth and Eighth Amendment claims against county for evicting plaintiff where eviction was ordered by court).

Because Mr. Bruce has alleged no injury apart from those caused by the state court judgment and the remedy he seeks would amount to reversal of that judgment, the district court lacked jurisdiction over his complaint.

### III.      CONCLUSION

Mr. Bruce seeks compensation for injuries caused by his losses in state court. Congress has not authorized lower federal courts to provide such relief. Accordingly, we AFFIRM the district court's dismissal of Mr. Bruce's complaint for lack of subject matter jurisdiction.