**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLIFTON WHITE,

     Plaintiff - Appellee,

v.

ALISHA TAFOYA LUCERO, New
Mexico Corrections Department, in her
individual capacity; JOE LYTLE, New
Mexico Corrections Department, in his
individual capacity; MELISSA ORTIZ,
New Mexico Corrections Department, in
her individual capacity,

     Defendants - Appellants,

and

LISA PADILLA, New Mexico
Correctional Department, in her individual
capacity; CATHY CATANACH, New
Mexico Corrections Department, in her
individual capacity; ELIJAH LANGSTON,
New Mexico Corrections Department, in
his individual capacity; JUDITH
ANDERSON; ANTHONY ROMERO;
JANE AND JOHN DOES (1-10);
CORECIVIC, INC., f/k/a Corrections
Corporation of America; GERMAN
FRANCO,

     Defendants.
_____

No. 24-2035

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:21-CV-01204-MIS-JFR)**
_____

Mark E. Komer, Long, Komer & Associates P.A., Santa Fe, New Mexico, for Defendants-Appellants.

Ryan J. Villa, The Law Office of Ryan J. Villa, Albuquerque, New Mexico (Leon Howard, ACLU of New Mexico, Albuquerque, New Mexico, with him on the brief) for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

Clifton White claims New Mexico Corrections Department officials knew he was serving an unlawful sentence but failed to discharge him. He brought civil rights claims under 28 U.S.C. § 1983, alleging the prison officials violated his constitutional right by failing to release him after he told them that his term of incarceration for violating probation was wrongfully entered. In response, the prison officials argue they were relying on a facially valid sentencing order by the state court that required White's continued detention, and they had no power to modify the order or release him absent a court directive—even if they believed the court erred.[1]

_____

[1] The Defendants in this appeal are two deputy wardens and a warden of different facilities in the New Mexico Corrections Department system. Our decision here does not opine on the duties or responsibilities of other employees of the Department.

The prison officials moved to dismiss the complaint, asserting qualified immunity. The district court denied the motion, concluding the law was clearly established that prison officials violate the law when they continue to imprison individuals past their release date without a lawful basis.

We conclude the prison officials are entitled to qualified immunity. No controlling Tenth Circuit law clearly establishes that prison officials act unlawfully in keeping a defendant incarcerated when they are relying on a facially valid judicial sentencing order, even if the officials believe the order was made in error. And neither does our case law put prison officials on notice that they have a duty or the power to disregard a judicial sentencing order if they suspect it is flawed. Yet according to White, that is exactly what these officials were required to do. But when there is a judicial order mandating a sentence in which the defendant disagrees, the proper recourse is to appeal that sentence through the state or federal judicial process. No clearly established law requires prison officials to ignore, correct, or act contrary to a facially valid sentencing order in these circumstances.

Because the law is not clearly established that the prison officials' conduct in this case is unconstitutional, we **REVERSE**.

## I.    Background

White's long track record with law enforcement started in 2002, when he was indicted for various crimes, including armed robbery, kidnapping, trafficking, and aggravated assault with a deadly weapon. In 2003, he entered a plea agreement on his state charges, and the court sentenced him to nineteen years of a suspended

sentence, six years of imprisonment, and probation. After serving jail time, White was released on probation in January 2008.

But by the end of 2012, White had violated probation four times. In December 2012, after his fourth probation violation, the state court sentenced him to five years of incarceration with the New Mexico Corrections Department. In May 2015, the court adjusted his sentence based on a stipulation between White's counsel and the district attorney, which recalculated his time served. The court then ruled White would serve two additional years of probation, with parole to run concurrently, upon his release in June 2015. White completed his term and was released on June 5, 2015. His two-year probation started that same day.

But White violated probation once again, and the State moved for revocation in July 2016. The revocation hearing was set for February 2017. This time, White challenged the State's power to revoke his probation and parole on the ground that, based on his earned credits, the State's jurisdiction over him had ended in September 2016. In response, the district attorney provided a jurisdictional calculation that found the State still had 2,922 days remaining on his suspended sentence. White apparently did not object to this calculation. The state district court accepted these representations, and on February 16, 2017, reinstated White's term of probation for another three years.

This probation did not last long, either. In December 2017, after White again violated probation, the state district court revoked probation and sentenced him to

4

two years in jail.  The court also ordered two years of parole after completion of the two-year sentence.

White challenged this order in two ways.  First, he filed a habeas petition on December 13, 2017, claiming he had completed his 2003 sentence based on various presentence confinement and probation credits he had earned.  The petition was denied on January 11, 2018, with the reviewing court concluding that as of White's "December 7, 2017 sentencing, the Court had more than five years of jurisdiction left and therefore, the two-year sentence did not exceed the [sentencing] Court's jurisdiction."  App., Vol. I at 139.  Second, White made a direct appeal of the 2017 order to the New Mexico Court of Appeals, challenging the State's revocation of probation.  Notably, White did not challenge the validity of the 2017 order in this appeal on the ground that the State lost jurisdiction over him, nor did he argue that he had completed his 2003 sentence by the time he was sentenced in 2017.  Rather, he challenged whether there was sufficient evidence to show his violation of probation was willful.  *Id.* at 95.  In March 2019, the New Mexico Court of Appeals answered that question in the affirmative and found no reason to disturb the state district court's ruling.  *Id.*

After his habeas petition was denied, White allegedly spoke at various times with Deputy Wardens Alisha Tafoya Lucero and Joe Lytle and Warden and Deputy Director Melissa Ortiz, all of whom were New Mexico Corrections Department officials.  According to White, he told these officials he should not be in prison because his earned credits for his previous probation violations had been incorrectly

5

calculated. If they had been correctly calculated and applied, the State's jurisdiction had lapsed as of September 6, 2016, and he should have been discharged completely from his 19-year sentence by the time his probation revocation hearing occurred in February 2017. In other words, White told them he should not have been on probation in 2017 in the first place, and the state court had no jurisdiction to sentence him in December 2017 for a probation violation.

White claims these officials acknowledged that he might be right the State lost jurisdiction over him after he completed his previous sentence for probation violations. But despite this acknowledgment, they continued to keep him in custody.

As a result, White remained incarcerated and finished his two-year sentence in September 2019. He was then set to serve parole for two years. But in June 2020, White was arrested again for violating the terms of his parole. During the preliminary hearing before the Parole Hearing Officer, White argued the State did not have jurisdiction over him. The Hearing Officer disagreed, and White was sentenced by the state district court to a jail term once again.

But a few months later, in October 2020, and for reasons not stated in the complaint, the district attorney and White jointly filed a stipulation asking the state district court to order his release. Neither White nor the prison officials explain the events prompting the stipulation or the reasoning behind it. The stipulated order, which the state district court approved, found that White had earned various presentence confinement and probation credits that had not been properly applied. According to the stipulation, when White was sentenced in 2012 for a five-year

6

period of imprisonment, "neither the Parties nor the Court properly accounted for or delineated in the probation revocation order the amount of probation credit that Defendant had already earned toward Count 5." App., Vol. I at 32–33. As a result, "Defendant discharged all remaining parole jurisdiction on or about September 6, 2016, and thus was inadvertently erroneously released onto parole on September 16, 2019." *Id.* In other words, the State lost jurisdiction over White as of September 6, 2016, and thus had no authority to place him on parole after the completion of his sentence. White was released after the stipulation and discharge order.

White then filed suit, asserting 28 U.S.C. § 1983 civil rights claims against twenty defendants. The defendants moved to dismiss, but the court denied the motion to dismiss as to Lucero, Lytle, and Ortiz. Relevant here, the district court rejected their assertion of qualified immunity. According to the district court, it was clearly established that prison officials violate the Eighth and Fourteenth Amendments "when they continue to imprison individuals they know to be incarcerated without lawful basis, or when they are deliberately indifferent to the prospect that prisoners in their charge are incarcerated without lawful basis." App., Vol. II. at 398–99.

## II.    Discussion

The prison officials argue they are entitled to qualified immunity because, among other things, they were bound to keep White detained based on a facially valid

court order, and it was not clearly established they had a duty to release White in contravention of a court order that required his detention.

The denial of qualified immunity on a motion to dismiss is an "appealable final order if it turns on an issue of law." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (citation omitted). "When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Id.* (citation omitted). "If the plaintiff fails to satisfy either prong of qualified immunity, his suit fails." *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). "Accordingly, we have discretion to decide the order in which these two prongs should be addressed, and need not address both." *Id.* (internal quotation marks and citation omitted). But if disputed facts must be resolved to determine whether qualified immunity applies, we do not have jurisdiction. *See Mayfield*, 826 F.3d at 1255 (the denial of a motion to dismiss for qualified immunity is reviewable on appeal so long as the order "turns on an issue of law").

The prison officials argue they did not violate a constitutional right, nor was any right clearly established that imposed a duty on them to correct or act contrary to a facially valid sentencing order. But even assuming White plausibly alleged the violation of a constitutional right, it was not clearly established that the law applied to the circumstances in this case.

8

## A.    *Appellate Jurisdiction*

Before reaching the merits, we must establish whether we have jurisdiction. White argues we lack jurisdiction because the prison officials' arguments turn on disputed questions of fact.  He contends the officials are asserting a factual defense that they were simply following a 2017 court order, which mandated White's two-year sentence and was not alleged in the complaint.

We disagree.  There is no dispute White was incarcerated pursuant to the 2017 court order.  In the complaint, White alleged that "[o]n December 8, 2017, the court remanded [him] to the Department of Corrections for two years beginning on December 6, 2017."  Third Amended Compl. (TAC) ¶ 77.  By relying on the 2017 court order mandating White's two-year sentence, the prison officials are not raising a factual construction at odds with the allegations in the complaint.  To the contrary, their reliance on the order is *consistent* with the facts White alleged.  The order is also consistent with White's allegation that the New Mexico Corrections Department miscalculated or misapplied his sentence prior to 2017—though to be sure, White does not allege Lucero, Lytle, and Ortiz were the ones who miscalculated his sentence.  Nor does he allege the prison officials in this appeal were involved in any way in the legal proceedings that led to his discharge in 2020.

In other words, we can accept both things as true: (1) the New Mexico Corrections Department miscalculated his good-time credits prior to 2017; and (2) in December 2017, the state court issued an order sentencing White to two years of

9

imprisonment. Both were sufficiently alleged in the complaint. And since these allegations are consistent with each other, no factual dispute exists here.

Still, even if White had not sufficiently alleged the existence of the 2017 court order in his complaint, we may not ignore it, since that order directly pertains to the situation the prison officials faced when they interacted with White. We can take judicial notice of the 2017 court order, since courts can consider a "document central to the plaintiff's claim and referred to in the complaint . . . in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). Indeed, courts can even take judicial notice of documents sua sponte as long as the documents have "a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *see also Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023). The 2017 court order goes to the primary question at issue here: whether the prison officials should have released White in the face of a facially valid judicial order mandating his continued incarceration. Neither party disputes the authenticity of that order. Accordingly, we take judicial notice of the 2017 sentencing order.

### B.    Clearly Established Law

Because courts "are free to decide which prong to address first" in the two-prong qualified immunity inquiry, we choose to begin with whether clearly established law exists that applies to the prison officials' conduct. *Weise v. Casper*, 593 F.3d 1163, 1166–67 (10th Cir. 2010).

10

To show clearly established law, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (citation omitted). "Although Supreme Court precedent 'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis added) (citation omitted). The relevant question is whether the clearly established law "appl[ies] with obvious clarity to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1157 (10th Cir. 2018) (citation omitted).

We agree with the prison officials that no clearly established law required them to correct White's sentence or release him contrary to the 2017 sentencing order.[2] The cases cited by White stand for the uncontroversial proposition that prison officials may not keep a prisoner *longer than what the sentencing court had ordered*. But that is not the case here. Rather, the prison officials were detaining White *because the judicial order mandated it*. None of the cases cited by White hold that

---

[2] White argues the prison officials waived their right to challenge the district court's framing of clearly established law because they do not identify where the district court erred. We disagree. The prison officials obviously contend the district court erred by failing to acknowledge the 2017 court order, and they are urging us to consider the 2017 order when examining whether relevant, clearly established law exists.

11

prison officials have a duty to ignore or reject a facially valid judicial order—and release an individual entirely—even if they acknowledge it might contain errors.[3]

### 1.  Tenth Circuit Cases

As far as in-circuit cases go, the district court relied on an unpublished New Mexico district court case, *Saiz v. Franco*, No. 15 CV 587 JAP/JHR, 2018 WL 1124197, at *10 (D.N.M. Feb. 27, 2018), to show clearly established law.  But two problems exist in relying on *Saiz*.  First, "[d]istrict court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021).  Second, unpublished cases "provide little support for the notion that the law is clearly established." *Knopf v. Williams*, 884 F.3d 939, 947 (10th Cir. 2018) (citation omitted).

---

[3] To the extent White argues it was clearly established that prison officials had a duty to investigate his claim of wrongful detention—as opposed to release him entirely—that argument fails by White's own allegations.  After he was informed of White's claim of overincarceration, Lytle allegedly "brought this conversation to Defendant Tafoya Lucero's attention," arranged for "Lucero to speak with Mr. White," and told White that the "head of records . . . would continue to be in touch about the calculation of his sentence with Defendant Tafoya Lucero."  TAC ¶ 72(g)–(h).  As for Lucero, she allegedly came to talk to White as the Deputy Warden after being informed of White's complaints, reviewed White's files, and told a "records custodian at that facility to look at Mr. White's files." *Id.* ¶ 72(i).  Finally, Ortiz allegedly had a "personal conversation" with White about his complaints. *Id.* ¶ 72(x)–(z).  In other words, according to the complaint, far from doing nothing, the prison officials actually looked into White's claims.  To the extent that White argues the prison officials should have done more, he cites no case law clearly establishing what they should have done short of releasing him entirely, which in turn would have violated the 2017 court order, something no clearly established law required them to do, as we explain.

But even on the merits, *Saiz* lacks sufficient similarity.  In *Saiz*, the plaintiff inmate appeared for an in-prison hearing after being accused of "brutally assaulting another inmate."  2018 WL 1124197, at *2.  The presiding hearing officer ruled against the plaintiff, so plaintiff lost his good time credits and was moved to a disciplinary segregation unit.  The plaintiff then appealed this decision to the New Mexico Corrections Department, and the Department reversed the decision for procedural error and ordered the "disciplinary officer/records coordinator" to "update the good-time along with readjusting [the plaintiff's] PRD date [projected release date]."  *Id.* at *3.  But no one notified the warden about this decision, so the plaintiff was detained longer than he should have been.  *Id.* at *4.  The plaintiff sued the warden, but the court granted qualified immunity because the warden lacked any knowledge about plaintiff's updated release date.  *Id.* at *11.

*Saiz* is not on point because that case was about prison officials who overdetained the plaintiff contrary to a governing order.  That principle seems obvious enough: prison officials may not hold a prisoner longer than what the court allows.  But here, the prison officials kept White in custody *pursuant to* a valid court order.  *Saiz* does not speak to whether prison officials have a duty—or the power—to ignore or undermine a court order that mandates a sentence simply because they believe the sentencing court erred.

If anything, recent case law cuts *against* White's argument.  In a case decided after the district court issued the order in this case, we granted qualified immunity to corrections officials where the inmate "fail[ed] to show that defendants—who [were]

13

merely prison officials—ha[d] any authority, let alone duty, to review the legality of the parole board's revocation orders and correct any orders it deem[ed] illegal." *Dyer v. Carlson*, 2024 WL 3290231 (10th Cir. 2024) (unpublished).[4] In *Dyer*, the prisoner escaped from parole supervision and was arrested in a different state. *Id.* at *1. The Colorado State Board of Parole "revoked his parole for the remainder of the parole period." *Id.* Dyer believed the parole board violated his rights by "revoking his parole [beyond] 30 days based on an absconding violation," since the Colorado parole-revocation statute only allowed the parole board to "revoke his parole for *up to* 30 days*." Id.* (emphasis added). Dyer sued corrections officials under § 1983, arguing that although he told several corrections officials that his sentence was invalid, they failed to do anything about it. *Id.* at *1. The panel, however, affirmed the officials' qualified immunity, finding the law was not clearly established that the corrections officials' "fail[ure] to investigate [Dyer's] ex post facto complaint, correct the parole board's revocation order, and facilitate his release from prison— violated the Constitution." *Id.* at *2. !This case only shows the law is not clearly established that the prison officials' inactions here were unconstitutional.

White directs us to no other Tenth Circuit case on point. So as far as Tenth Circuit cases go, we find it is not clearly established that the prison officials' conduct here was unlawful.

---

[4] Unpublished opinions "can be quite relevant in showing that the law was *not* clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis added).

### 2.    Out-of-Circuit Cases

The district court also relied on several out-of-circuit cases for clearly established law.  And that is permissible, as long as "the clearly established weight of authority from other courts . . . found the law to be as the plaintiff maintains." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (citation omitted).  The rule is no different for out-of-circuit cases: they must involve "*materially similar conduct*" and apply with "*obvious clarity* to the conduct at issue."  *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation marks and citations omitted).  "The dispositive question" remains the same: "whether the violative nature of the *particular* conduct is clearly established."  *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (internal quotation marks and citation omitted).

But like *Saiz*, all the out-of-circuit cases are unhelpful because the prison officials in each case kept the prisoner incarcerated longer than his ordered sentence allowed.  That is not the case here, where the prison officials were in fact complying with the court's order in detaining White.  Consider the facts from the cases cited by White:

- In *Whirl v. Kern*, 407 F.2d 781, 785 (5th Cir. 1968), the plaintiff was detained even though the district attorney had "sought and obtained dismissal of the indictments" against him, and the court's minute order stated the charges against the plaintiff were dismissed.

- In *Sample v. Diecks*, 885 F.2d 1099, 1104 (3d Cir. 1989), prison officials refused to release the plaintiff even though his murder conviction was overturned and the court had granted bail.  The prison official mistakenly believed the plaintiff "still had time to serve on another sentence" and therefore refused to release him, even though the plaintiff had already served that sentence.  *Id.* at 1102–03.

15

- In *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990), the plaintiff was arrested in Germany on local charges, served time in German prison, and was extradited to the United States where he was convicted of fraud and income tax charges. The district court found that the plaintiff should receive credit for his time spent in German custody, but the prison officials tried to keep him "incarcerated for a longer period" by failing to give him all the credit he was entitled. *Id.* at 1394–95.

- In *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004), the plaintiff entered into a plea agreement and received a new sentence after his felony conviction was reversed. *Id.* at 706. The court imposed a "one-year sentence with credit for time served," but the plaintiff had already "served approximately one and one-half years, and there were no other warrants or holds on him." *Id.* The plaintiff was ordered to be "immediately released," yet he was still detained for 57 days at the county jail and state corrections facility, contrary to court order. *Id.* at 706–07, 709.

Like *Saiz*, these cases stand for the noncontroversial proposition that, if the court orders the prisoner to be released by a certain date, prison officials must generally release him by that date. Prison officials may not overdetain a prisoner or lengthen a sentence contrary to court order.

But White's complaint involves no such facts. As we have explained, this case does not involve prison officials lengthening an inmate's sentence contrary to court order but in compliance with it. So the relevant question is whether the prison officials were constitutionally obligated to *ignore* or *correct* a court order they must otherwise enforce if they believed the court erred. None of the cases above shed any light on this question, and therefore, there is no clearly established law that "appl[ies]

16

with obvious clarity to the specific conduct in question." *Halley*, 902 F.3d at 1157

(citation omitted).[5]

The case that comes closest is *Sabo v. Erickson*, 100 F.4th 880 (7th Cir. 2024).

But even there, White's reliance on that case is misplaced.  First, that case was

decided *after* the prison officials' conduct here, so it cannot be used for clearly

established law.  *See DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001) (for

clearly established law, "we examine the law as it existed at the time of the

challenged actions").  Second, that case has been reversed en banc.  In the original

panel decision, the court denied qualified immunity to corrections officials whose

tasks included "review[ing] and correct[ing] sentences that exceeded the statutory

maximum" and submitting those corrections, if any, to sentencing judges "as a

courtesy."  *Sabo*, 100 F.4th at 884.  The corrections officials failed to realize they

had been conducting their reviews under the wrong legal standard for various

offenses and therefore did not catch the mistake on the plaintiff's sentence, along

with scores of others.  These mistakes also escaped the court's notice, and the court

sentenced the plaintiff to a five-year probation term, even though he was only subject

to three-years of probation, maximum.  The plaintiff then sued the corrections

---

[5] The existence of this court order also distinguishes *Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir. 1985), and *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016), which White cites in passing.  Both cases involved sentencing miscalculations by the corrections department, but none of the corrections officials in either case faced a court order that mandated the prisoner's continued incarceration.  Accordingly, neither case provides any guidance on the situation the prison officials faced here.

officials, and the Seventh Circuit denied their qualified immunity defense. The court found that the defendants' failure to correct these sentencing errors was unconstitutional—even though the court had issued its order, and they did not know their error affected plaintiff's case specifically.

But the Seventh Circuit reversed course en banc, and the original panel decision is no longer good law. In finding the corrections officials were entitled to qualified immunity, the en banc court stated, "[o]ur legal system divides responsibility between judges, who impose sentences of probation and imprisonment, and correctional officers, who administer those sentences." *Sabo v. Erickson*, 128 F.4th 836, 847 (7th Cir. 2025). The en banc panel therefore "reject[ed] the contention that existing law clearly establishes that prison officials violate the Eighth Amendment when they do not intervene to correct a sentencing judge's error." *Id.*

The same reasoning applies here. Even if the court's order was based on previous miscalculations that occurred years earlier, the prison officials had no duty or power to disregard a facially valid judicial order. Whether the error originated with the Corrections Department is irrelevant as far as these prison officials are concerned, since the court had issued a sentence in the intervening time, and as prison officials, they were tasked with enforcing that order; they were not constitutionally required to second-guess it. Indeed, White cites no case that *requires* prison officials to disregard a facially valid court order and issue a certificate of discharge to the inmate on the spot if they believe the court erred. That would be an extraordinary step, because state officials are not "pseudo-appellate courts

18

scrutinizing the orders of judges." *Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990) (citation omitted).  That is not their job; "[t]he Constitution does not require personnel outside the judiciary to seek, find, and fix judicial errors." *Sabo*, 128 F.4th at 848 (Easterbrook, J., concurring).  To the contrary, "[p]rison officials may properly assume that they have the authority to execute the sentencing orders delivered to them by the court without fear of civil liability." *Stein v. Ryan*, 662 F.3d 1114, 1119 (9th Cir. 2011).  "Even assuming that the [sentencing] order was infirm as a matter of state law, it was facially valid.  'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Turney*, 898 F.2d at 1473.

We recognize the dilemma here.  A mistake was apparently made that should have been corrected at his 2016 discharge or in the various judicial proceedings afterwards, including his habeas petition.  But White does not allege *these three prison officials* were involved in that mistake, and once the court issues a facially valid sentencing order, no clearly established law permits them to disregard it.

## III.  Conclusion

For the reasons stated above, we reverse.