In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2722

LUIS ROLDAN,

*Plaintiff-Appellee,*

*v.*

JASON STROUD, *et al.,*

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-03707 — **John F. Kness**, *Judge.*

———————————

ARGUED OCTOBER 4, 2022 — DECIDED OCTOBER 25, 2022

———————————

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Rarely do we see qualified immunity awarded at the pleading stage. The reason is because determinations of qualified immunity most often depend on facts a plaintiff is not required to plead at the outset of litigation to avoid dismissal. This case illustrates the point.

Luis Roldan sued several police officers who investigated him for sexual assault. He alleged that the officers failed to disclose an agreement to help the victim apply for an immigration benefit—a U visa—in exchange for her testimony at his criminal trial. The officers moved to dismiss the complaint based on qualified immunity. The district court denied the motion on grounds that the Supreme Court's 1972 decision in *Giglio v. United States* and related cases clearly established the officers' duty to disclose the agreement.

We agree that immunity is inappropriate at this early stage but for a different reason. Qualified immunity hinges on a fact that Roldan did not flesh out in his complaint: whether the police officers informed the prosecution about the U-visa agreement with the victim. If the police did, they cannot be liable, for the ultimate disclosure obligation would have rested with the prosecutors. We therefore affirm and remand for discovery on whether any prosecutor knew about the agreement.

# I

## A

In 2011 state prosecutors charged Luis Roldan with three counts of criminal sexual assault. See 720 ILCS 5/11–1.20 (2011). The indictment alleged that Roldan, then 21, had sex with an intoxicated 16-year-old noncitizen. In 2013, after a bench trial at which the victim testified, a judge convicted Roldan of two of the counts. The Illinois Appellate Court later reversed the conviction, concluding that the state did not prove that Roldan knew the victim was too intoxicated to consent. See *People v. Roldan*, 42 N.E.3d 836, 843 (Ill. App. Ct. 2015).

Drawing upon information he learned after trial, Roldan later invoked 42 U.S.C. § 1983 and sued several police officers in the Cicero Police Department. He alleged that the officers, "in concert with the prosecution," promised to help the victim obtain a U visa in exchange for her trial testimony but never disclosed that fact to him during the criminal prosecution. Roldan saw this agreement as impeachment evidence that should have been turned over to him under *Giglio v. United States*, 405 U.S. 150 (1972).

A U visa is a form of temporary status available to noncitizens who have been victims of certain crimes in the United States. See 8 U.S.C. § 1101(a)(15)(U) (enumerating U-visa eligibility requirements). Law enforcement must certify that the applicant has been (or is likely to become) helpful in investigating or prosecuting the crime. See *id.* § 1184(p)(1). Roldan alleged that the police agreed to do just that—certify the victim's U-visa application on the condition that she testify against him.

B

The police officers moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that they were entitled to qualified immunity. Qualified immunity is a defense protecting government officials from both liability and suit. See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To receive qualified immunity, officials must show either that they did not violate a constitutional right or that the right was not clearly established at the time of the alleged violation. See *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

The district court denied the officers' motion to dismiss. In the court's view, *Giglio* and related cases clearly established

the duty to disclose a promise of assistance with a testifying witness's U-visa application.

The defendants sought immediate review, invoking our jurisdiction under the collateral-order doctrine. See *Behrens v. Pelletier*, 516 U.S. 299, 306–07 (1996) (explaining that the denial of qualified-immunity defense at pleading stage is immediately appealable).

## II

In reviewing a district court's denial of qualified immunity on the pleadings, we take our own fresh look at the facts, drawing all reasonable inferences in favor of Roldan as the non-moving party. See *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018).

## A

Under *Brady v. Maryland*, the government violates a criminal defendant's due process rights when it fails to disclose evidence favorable to the defendant and material to guilt or punishment. 373 U.S. 83, 87 (1963). *Giglio* extended that rule to impeachment evidence—to information calling into question the credibility of a witness. See 405 U.S. at 153. The government runs afoul of *Giglio* when it suppresses evidence of a material agreement that might have undermined the credibility of a witness. See *id.* at 153–54; *United States v. Jumah*, 599 F.3d 799, 808 (7th Cir. 2010). An agreement is material if its disclosure was reasonably likely to change the outcome of the proceedings. See *Jumah*, 599 F.3d at 808.

The question then becomes who on the law enforcement side—police officers or prosecutors—bears the obligation to disclose. *Brady* and *Giglio* are usually understood to impose a duty on prosecutors to make any required disclosure to the

defense. See *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). But the disclosure obligation sometimes falls to police officers if they are the only ones who know about the exculpatory or impeachment evidence in question. See *id.* (citing *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)). Officers typically satisfy this obligation when they disclose evidence to the prosecutor. See *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015); but see *Whitlock v. Brueggemann*, 682 F.3d 567, 576 (7th Cir. 2012) (recognizing an exception when police and prosecutors conspire to fabricate evidence).

B

We agree with the district court that an award of qualified immunity is inappropriate on the pleadings here, though we take a different path to reach that conclusion.

Our cases make clear that the motion-to-dismiss stage is rarely "the most suitable procedural setting to determine whether an official is qualifiedly immune." *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020). The reason is simple: at the outset of litigation, we often cannot tell from a complaint whether qualified immunity applies. See *Reed*, 906 F.3d at 548–49.

To survive a motion to dismiss, plaintiffs need only include "a short and plain statement" of a claim that is plausible on its face and entitles them to relief. Fed. R. Civ. P. 8(a)(2); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Put another way, plaintiffs do not have to recite every detail related to their allegations. They just have to include enough facts to present "a story that holds together." *Reed*, 906 F.3d at 548 (quoting *Catinella v. County of Cook*, 881 F.3d 514, 516 (7th Cir. 2018)).

Qualified immunity, by contrast, is a defense that "often depend[s] on the particular facts of a given case." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). When a defendant invokes qualified immunity, we do not raise the pleading standard and require plaintiffs to "anticipate and overcome" that defense. *Id.* The facts essential to this defense typically emerge during discovery, and so we most commonly see qualified immunity invoked in a motion for summary judgment.

The case before us illustrates the difficulty of trying to see the details relevant to qualified immunity through the lens of a motion to dismiss. Taking Roldan's allegations as true and drawing reasonable inferences in his favor, we (like the district court) have little difficulty concluding that the state suppressed a material agreement that might have undermined the victim's credibility. See *Jumah*, 599 F.3d at 808.

But remember who Roldan sued—the police officers. Those officers ordinarily have a duty to disclose the agreement only to the prosecutors. See *Beaman*, 776 F.3d at 512. This matters because Roldan alleged that the officers and the prosecution acted "in concert" with each other to suppress the agreement and that the prosecution "knew or should have known" that the agreement was *Giglio* material. To our eye, both statements appear to suggest that the prosecution knew about the police's promise to certify the victim's U-visa application as long as she testified against Roldan.

But those allegations are also amenable to a different interpretation. Perhaps Roldan mentioned the prosecution simply because of the route disclosure more commonly would have taken: police would have informed the prosecution, who, in turn, would have then disclosed the agreement

to Roldan. See *Carvajal*, 542 F.3d at 566. At the dismissal stage, however, we cannot draw an inference against Roldan or somehow hold him to a pleading standard beyond Rule 8 just because the defendants invoked qualified immunity as a defense.

C

Discovery is needed to shed light on who knew about the alleged U-visa agreement with the victim. If discovery reveals that the prosecution knew of the arrangement, then none of the police officer defendants could be liable under § 1983 unless the police and the prosecution conspired to fabricate evidence. See *Beaman*, 776 F.3d at 512 (explaining that police officers satisfy their duty under *Giglio* when they inform prosecutors of the impeachment evidence). The disclosure obligation would have instead rested with the prosecutor, who has already been dismissed from this case on grounds of absolute immunity.

We leave it to the discretion of the district court how to structure the discovery. See *Jacobs*, 215 F.3d at 774–76 (Easterbrook, J., concurring) (identifying means by which immunity may be decided without protracted discovery). Early summary judgment proceedings might preserve the resources of both the court and the parties, and nothing would prevent further summary judgment proceedings on other issues later in the case if that proves necessary.

For these reasons, we AFFIRM the district court's denial of the defendants' Rule 12(b)(6) motion to dismiss based on qualified immunity and REMAND for further proceedings.