In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 21-3332

JOHN SABO,

*Plaintiff-Appellant,*

*v.*

MEGAN ERICKSON, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 20-CV-718 — **William E. Duffin**, *Magistrate Judge.*

———————

ARGUED SEPTEMBER 10, 2024 — DECIDED JANUARY 31, 2025

———————

Before SYKES, *Chief Judge*, and EASTERBROOK, BRENNAN, SCUDDER, ST. EVE, KIRSCH, JACKSON-AKIWUMI, LEE, PRYOR, KOLAR, and MALDONADO, *Circuit Judges*.

ST. EVE, *Circuit Judge*. A Wisconsin judge sentenced John Sabo to a term of probation in excess of the maximum allowable under state law. Months after Sabo's sentence should have ended, he was arrested for a misdemeanor and then held in county jail for violating the terms of his probation. After

more than four months of incarceration, Sabo discovered the judicial error and secured his release.

Sabo now sues two employees of the Wisconsin Department of Corrections' Central Records Unit, Sheri Hicks and Debra Haley. Hicks and Haley were responsible for reviewing judgments of conviction to ensure compliance with Wisconsin law. For over a year, they reviewed sentences, including Sabo's, under an incorrect standard. Upon discovering their mistake, they did not take corrective action. Invoking 42 U.S.C. § 1983, Sabo alleges that their failure to act evinced deliberate indifference to his Eighth Amendment rights and seeks damages.

The district court granted Hicks and Haley's motion to dismiss, finding that Sabo failed to state a claim that they were deliberately indifferent to his Eighth Amendment rights. We affirm on other grounds. Because Sabo did not allege the violation of a clearly established constitutional right, Hicks and Haley are entitled to qualified immunity as a matter of law.

## I. Background

### A. Factual Background

On December 21, 2017, John Sabo was arrested and charged with resisting or obstructing a police officer, a misdemeanor. Because the arrest violated the terms of Sabo's probation, his probation agent initiated revocation proceedings. She also instructed the county jail to hold him in custody for the pendency of those proceedings.

But Sabo should not have been incarcerated for a probation violation—because he should not have been on probation. In 2004, Sabo was convicted of driving while under the influence, a Class H felony. The court stayed his sentence

while he served time for other offenses and imposed a five-year probationary term. The maximum allowable term of probation for a Class H felony at the time was three years, however, not five. Had Sabo's sentencing judge adhered to the statutory maximum, his probation would have ended by July 17, 2017, months prior to his misdemeanor arrest.

More than 10 years earlier, the Wisconsin legislature anticipated the possibility that judges could make errors when imposing terms of probation. In the early 2000s, it enacted a provision addressing the legal effect of a probation sentencing error. The law clarified that "[i]f a court imposes a term of probation in excess of the maximum authorized by statute, the excess is void . . . . [t]he term is commuted without further proceedings." Wis. Stat. § 973.09(2m) (2003).

Relying upon this statute, the Wisconsin Department of Corrections' Central Records Bureau acted as a check on probation sentencing errors. In the years surrounding Sabo's felony conviction, the Bureau charged Hicks and Haley with reviewing every judgment of conviction imposing a term of probation, approximately 800 each week. When they found an unlawfully long probation sentence, they corrected it and notified the probationer's supervising agent.

Yet in 2004 and early 2005, Hicks and Haley reviewed probation terms using the wrong standard. The judicial error in Sabo's sentence, which had already escaped the notice of his attorney and his sentencing judge, crossed their desks uncorrected. It was not until mid-2005 that Hicks and Haley realized they had misunderstood the relevant law.

In Sabo's telling, which we accept as true at this stage in the proceedings, Hicks and Haley made no effort to correct

their mistake. They did not inform their supervisor or Wisconsin probation agents of the error. And they did not attempt to re-check the tens of thousands of judgments of conviction they had reviewed under the wrong standard. Sabo does not allege, however, that Hicks and Haley knew his particular sentence was unlawfully long.

The erroneous probation term had significant consequences for Sabo. He was jailed for 134 days and served an extra five months of probation. Ultimately, Sabo discovered the sentencing error that so many others had missed by browsing a book in the jail law library. He contacted his attorney, who petitioned the court to correct his sentence. On May 3, 2018, Sabo's sentencing judge amended his judgment of conviction with the correct probation term, and Sabo was released from jail. This action followed.

**B. Procedural Background**

In May 2020, Sabo filed suit, raising both constitutional and state law claims. Relevant to this appeal, he alleged that Hicks and Haley's failure to take corrective action after discovering their error was deliberately indifferent to his Eighth Amendment rights and sought monetary relief under § 1983.

Hicks and Haley moved to dismiss Sabo's complaint. The district court granted their motion, holding that Sabo had not stated a claim that they acted with deliberate indifference because they had not known that Sabo's judgment of conviction contained an unlawfully long term of probation.

A divided panel of our court reversed the district court's judgment. The panel held that Sabo had stated an Eighth Amendment claim. It also found that Hicks and Haley were

not entitled to qualified immunity. We vacated the panel's opinion and voted to rehear the case en banc.[1]

## II. Standard of Review

To defeat a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a)(2). Plaintiffs need not "recite every detail related to their allegations." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). Nor must the complaint anticipate affirmative defenses or attempt to rebut them. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Nevertheless, accepting all well-pleaded facts as true, a plaintiff must allege enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In addition to making out a prima facie claim, a plaintiff suing state officers for monetary damages under § 1983 faces an additional hurdle at the motion to dismiss stage. The Supreme Court has made clear that a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014). Simply put, a plaintiff can plead himself out of court

---

[1] Sabo also sued his probation agents, Megan Erickson and Barb Hanson. The district court granted summary judgment in their favor. On appeal, the panel unanimously affirmed the district court's judgment. *See Sabo v. Erickson*, 100 F.4th 880, 891–92 (7th Cir. 2024). We granted rehearing en banc solely on the issue of Hicks and Haley's liability, so we now reinstate the panel opinion to the extent that it affirmed the district court and resolved Sabo's claims against Erickson and Hanson.

on qualified immunity grounds. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *see also Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022) (affirming the district court's grant of the defendant's motion to dismiss on qualified immunity grounds); *Ewell v. Toney*, 853 F.3d 911, 920 (7th Cir. 2017) (same); *Chasensky v. Walker*, 740 F.3d 1088, 1098 (7th Cir. 2014) (reversing the district court's denial of the defendant's motion to dismiss on qualified immunity grounds); *Harrell v. Cook*, 169 F.3d 428, 432–33 (7th Cir. 1999) (same).

Examining whether defendants are entitled to qualified immunity upon a motion to dismiss also comports with the Supreme Court's directive to resolve immunity questions "at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), because qualified immunity protects government officials from both litigation and liability, *see Behrens v. Pelletier*, 516 U.S. 299, 305–06 (1996).

So, dismissal of a plaintiff's complaint on qualified immunity grounds is appropriate if, taking the facts alleged in the light most favorable to the plaintiff, the defendant is entitled to qualified immunity as a matter of law.[2] *See Campbell v. Kallas*, 936 F.3d 536, 549 (7th Cir. 2019). In such circumstances,

---

[2] When a qualified immunity defense "closely depends" on factual determinations, dismissal under Rule 12(b)(6) is inappropriate. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018); *see also Sause v. Bauer*, 585 U.S. 957, 960 (2018) (reversing the grant of qualified immunity on a Rule 12(b)(6) motion because factual issues precluded resolution of the question).

the plaintiff may state a claim, but it is not one "upon which relief can be granted." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).

Accepting all well-pleaded facts as true and drawing all inferences in Sabo's favor, we review the district court's dismissal of his complaint de novo. *Reed*, 906 F.3d at 546.

### III. Discussion

Qualified immunity shields a government official from suit for damages under § 1983 "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Taylor v. Riojas*, 592 U.S. 7, 8 (2020); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts." (internal quotation omitted)).

The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. By guarding against "the disruption that could result from fear of liability or insubstantial lawsuits, qualified immunity 'acts to safeguard government, and thereby to protect the public at large.'" *Jones v. Clark*, 630 F.3d 677, 685 (7th Cir. 2011) (quoting *Wyatt v. Cole*, 504 U.S. 158, 168 (1992)).

To overcome a qualified immunity defense, plaintiffs must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time

of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts may exercise their discretion when choosing which element to address first. *Pearson*, 555 U.S. at 236; *see also Strand v. Minchuk*, 910 F.3d 909, 914 (7th Cir. 2018).

The second element of the qualified immunity inquiry—whether existing law clearly established the right Sabo alleges Hicks and Haley violated—decides this appeal. Accordingly, we begin and end our analysis there. *See Lovett v. Herbert*, 907 F.3d 986, 991–92 (7th Cir. 2018).

## A. Qualified Immunity and Clearly Established Law

A constitutional or statutory right is "clearly established" when the law is "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *al-Kidd*, 563 U.S. at 741). In other words, to clearly establish a right, existing precedent must place the constitutional or statutory question "beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)); *see also Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 988 (7th Cir. 2021) (describing the "clearly established" requirement as a "high bar").

The Supreme Court has repeatedly instructed us "not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021); *see also City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019); *Kisela*, 584 U.S. at 104; *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015); *al-Kidd*, 563 U.S. at 742.

Describing relevant precedent abstractly evades "the crucial question" at the core of any qualified immunity analysis:

"whether the official acted reasonably *in the particular circumstances* that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added); *see also Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("[A] right must be specific to the relevant factual context … and not generalized with respect to the Amendment that is the basis of the claim."). Litigants and courts formulate rules of law too generally "if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

To be sure, existing precedent need not be "directly on point" to clearly establish an alleged right. *Kisela*, 584 U.S. at 104 (internal quotation omitted). In truly egregious cases, a more general rule "may apply with obvious clarity to the specific conduct in question." *Riojas*, 592 U.S. at 9 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Stockton v. Milwaukee County*, 44 F. 4th 605, 620–21 (7th Cir. 2022).[3]

But where the reasonableness of an officer's actions depends on the circumstances, as it does here, plaintiffs must define clearly established law with much more specificity. *Cf. Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (observing that specificity is "especially important" in Fourth Amendment cases

---

[3] In *Riojas*, the Supreme Court found that "any reasonable officer" should have known that confining an inmate to a frigid, feces-covered cell for days violated his right to be free from punishment inflicted via exposure to "wantonly degrading and dangerous situations." 592 U.S. at 9 (internal quotation omitted). Similarly, our court found in *Stockton* that it "strain[ed] credulity" to think the defendant, "or any reasonable officer," could believe he acted lawfully when intentionally causing an inmate in medical distress to fall and hit his head. 44 F.4th at 621.

because reasonable conduct depends on "the factual situation the officer confronts") (internal quotation omitted); *Saucier v. Katz*, 533 U.S. 194, 202–03, (2001) (instructing courts to consider whether the facts presented are "distinguishable in a fair way" from prior precedent).

The dissent objects that *Mullenix*, a Fourth Amendment case, has little to say in the Eighth Amendment context. This misstates the law. The Supreme Court has explained that qualified immunity's "clearly established" requirement protects "officials accused of violating 'extremely abstract rights.'" *Ziglar*, 582 U.S. at 151 (quoting *Anderson*, 483 U.S. at 639). So, where a plaintiff alleges the violation of an abstract right, as Sabo has done here, "[t]he Fourth Amendment provides an example of how qualified immunity functions." *Id.*

Moreover, our court does not break new ground when defining clearly established Eighth Amendment law with specificity. The Supreme Court, too, has demanded factual particularity in the Eighth Amendment context. *See Taylor v. Barkes*, 575 U.S. 822, 825–26 (2015) (unanimously rejecting the existence of a clearly established right "to the proper implementation of adequate suicide prevention protocols" where "[n]o decision of this Court even discusses suicide screening").

In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine whether clearly established law prohibited the defendant's conduct, we must frame the asserted right "in terms granular enough to provide fair notice." *Kallas*, 936 F.3d at 546 (citing *Kisela*, 584 U.S. at 104). Heeding these instructions, we turn to Sabo's claim and the right he alleges Hicks and Haley violated.

**B. Sabo's Eighth Amendment Claim**

Section 1983 grants any person within the jurisdiction of the United States a private right of action against "any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023) (quoting 42 U.S.C. § 1983). The statute, on its own, does not confer substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Instead, § 1983 provides a means of enforcing federal rights conferred elsewhere. *Id.* The elements of a § 1983 claim, then, depend upon the underlying right the plaintiff alleges was violated. *See Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017). Here, Sabo alleges a breach of the Eighth Amendment's cruel and unusual punishments clause.

The Supreme Court has long recognized that the protections of the Eighth Amendment extend beyond the prohibition of "physically barbarous punishments." *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). A correction official's "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. Indeed, "when the State … so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses … the Eighth Amendment." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (citing *Estelle*, 429 U.S. at 103–04).

In *Campbell v. Peters*, our court imported the deliberate indifference standard into cases where plaintiffs alleged that

correction officials incarcerated them beyond the term of their sentence. *See* 256 F.3d 695, 700 (7th Cir. 2001). We remarked that "[a]t a general level," unlawfully extended incarceration, if "the product of deliberate indifference," could violate the Eighth Amendment. *Id.* Our court has subsequently reaffirmed that precept. *See Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016) ("Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference."); *Wells v. Caudill*, 967 F.3d 598, 602 (7th Cir. 2020).

Sabo relies upon these general principles to contend that Hicks and Haley violated clearly established law when they did not take corrective action after discovering they had reviewed thousands of judgments of conviction, including Sabo's, under an erroneous probation standard.[4]

When we compare the precedent Sabo cites in support of this allegation against the facts of his case, three crucial differences immediately surface. These differences preclude a finding that the alleged unlawfulness of Hicks and Haley's conduct "follow[s] immediately" from clearly established law. *See Wesby*, 583 U.S. at 64.[5]

---

[4] Sabo concedes that Hicks and Haley's initial failure to identify Sabo's unlawfully long term of probation was the product of negligence, not deliberate indifference, and therefore cannot support an Eighth Amendment claim. *See Wells*, 967 F.3d at 601 (holding allegations of "simple error, negligence, or even gross negligence" are insufficient to support claims under the Eighth Amendment (citing *Farmer*, 511 U.S. at 835–36)).

[5] These facts are all established by Sabo's complaint. So, we may, indeed, must, consider them upon a motion to dismiss.

*First*, Hicks and Haley lacked notice of Sabo's erroneous sentence. Sabo's attorney never brought the error to their attention. Nor did a corrections staff member, probation agent, court official, or anyone else. Yet, notice to the defendants was the linchpin of our court's decision in *Figgs*.

While out on bond for an unrelated drug charge, Figgs committed a murder. After he pleaded guilty to the drug offense and was convicted of the murder, correctional officers erroneously marked the murder as a violation of his mandatory supervised release for the drug offense. *Figgs*, 829 F.3d at 898. The error triggered an additional two years of imprisonment—delaying Figgs's calculated release date from January 11, 2011, to November 3, 2013. *Id.* at 899, 901.

Over the course of nearly eighteen months, Figgs repeatedly and forcefully contested the calculation of his release date. He submitted inmate request slips, filed formal grievances, and sought habeas relief, all to no avail. *Id.* at 899–901. The correctional officer responsible for calculating and reviewing inmates' release dates knew of Figgs's complaints but did nothing to investigate their substance. *Id.*

On these facts, we held "the failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Id.* at 906. It does not immediately follow from this holding, however, that a records officer who has no notice of or contact with an affected inmate can be held personally liable for a constitutional violation.

Other cases cited by Sabo are similarly unavailing. In every cited excessive incarceration case, the defendants had notice of the affected plaintiff. *See Peters*, 256 F.3d at 698

(alleging prison officials intentionally revoked the plaintiff's good conduct credits); *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) (alleging defendants failed to investigate the plaintiff's claim that his release date was incorrect); *Sample v. Diecks*, 885 F.2d 1099, 1104 (3d Cir. 1989) (same); *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985) (same).

*Second*, Hicks and Haley were not the source of the error that injured Sabo. The error derived from an unlawfully long term of probation imposed by his sentencing judge.

Our legal system divides responsibility between judges, who impose sentences of probation and imprisonment, and correctional officers, who administer those sentences. *See Belleau v. Wall*, 811 F.3d 929, 942 (7th Cir. 2016) (Flaum, J., concurring in the judgment) (observing that the Wisconsin Department of Corrections "traditionally executes criminal sentences"). Among the administrative tasks assigned to corrections departments is the calculation of inmate release dates. These calculations are essential to the fair administration of justice.

We have found that a correctional officer's deliberate indifference to an error in these calculations may violate an inmate's Eighth Amendment rights. *See Figgs*, 829 F.3d at 904–06. But we have never imputed liability for a sentencing judge's error to a corrections officer. For good reason. State courts enter judgments, not correctional officers. And conflicts between state law and judgments of conviction place correctional officers, who are not trained lawyers, in a precarious position. *Cf. Francis v. Fiacco*, 942 F.3d 126, 151 (2d Cir. 2019) (granting qualified immunity to correctional officers charged with an Eighth Amendment violation after they

complied with state law, rather than a conflicting and unlawfully lenient sentence).

In every case cited by Sabo, plaintiffs alleged that the defendant correctional officers were deliberately indifferent to errors the corrections department itself made in the execution of their sentences. *See Peters*, 256 F.3d at 700–01 (alleging prison officials required him "to serve more time than state law *and* his sentence required" (emphasis added)); *Alexander*, 916 F.2d at 1399 (alleging correctional officers miscalculated his foreign jail time credits); *Sample*, 885 F.2d at 1104 (alleging correctional officers incorrectly calculated his release date); *Haygood*, 769 F.2d at 1355 (alleging correctional officers erroneously required him to serve his sentence consecutive to another sentence, rather than concurrently).

Holding Hicks and Haley liable for not correcting a *judicial* error would require an expansion of our precedent.[6] We therefore reject the contention that existing law clearly establishes that prison officials violate the Eighth Amendment when they do not intervene to correct a sentencing judge's error.

*Third*, the error within Sabo's judgment of conviction sentenced him to an unlawfully long term of probation, not incarceration.

---

[6] The dissent asserts that the aforementioned cases clearly establish that any officer with the "ability to rectify" an alleged injury must do so, regardless of that injury's source. But no case from our court, or any other, supports holding an officer liable for an error made by an individual outside of that officer's supervisory purview, much less outside of the executive branch, altogether.

In previous cases, the defendants acted with deliberate indifference to the risk that the plaintiff was unlawfully incarcerated. Here, the risk was a level removed. Hicks and Haley knew that among the tens of thousands of sentences they reviewed, some probationers may serve an unlawfully long term of probation. But those affected would only face unlawful *imprisonment* if they violated a term of their probation and the state pursued that violation.

True, probation is a form of custody. *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015). We do not suggest that sentencing a defendant to an excessive term of probation is anything less than serious. Nevertheless, we frame our qualified immunity inquiry with granularity so as to provide fair notice. Correctional officers are not lawyers, and "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205. We cannot say, then, that all but the "plainly incompetent" would deduce from existing law that constitutional liability extends to records keepers who show deliberate indifference to an excessive term of probation. *Malley*, 475 U.S. at 341.

With these differences in mind, we conclude that existing precedent is not so clear that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. As such, Hicks and Haley are entitled to qualified immunity as a matter of law.

### IV. Conclusion

For the reasons stated in this opinion, the judgment of the district court is

AFFIRMED.

EASTERBROOK, *Circuit Judge*, with whom *Chief Judge* SYKES and *Circuit Judges* SCUDDER and KIRSCH join, concurring. Sabo's sentence specified a term of probation longer than Wisconsin's law allows. He did not appeal. While on probation, he was charged with violating the conditions of release and returned to custody. Before that charge could be adjudicated, the sentencing judge corrected the error (acting immediately after Sabo's attorney called the issue to judicial attention), and Sabo was freed. Later he sued four state officials who did not detect and rectify the judicial error earlier—and our panel held that he may be entitled to damages from two of these four.

I agree with my colleagues that qualified immunity protects the defendants from personal liability. Indeed, these officials did not violate the Constitution in the first place. The Constitution does not require personnel outside the judiciary to seek, find, and fix judicial errors. See *Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006). The Supreme Court has never held that civil-service employees must second-guess judges' decisions about the length of custody. Instead the Court has held that the "judicial Power" is one to make decisions that are not subject to review and revision by other branches. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995). I do not see how the Constitution that requires federal administrative officials to implement federal judges' decisions can make state administrative officials liable for implementing state judges' decisions.

States may empower their administrative officials to countermand the decisions of state judges, and Wisconsin may have done this with respect to the duration of probation. Wis. Stat. §973.09(2m). Defendants may have failed to carry out

their duties under this statute. But it is black letter law that the Constitution does not require state employees to implement state rules correctly. As far as the Constitution is concerned, state administrative officials are not required to amend decisions of state judges.

I am willing to suppose that defendants' inattention to the risk of judicial error deserves the label "deliberate indifference." For constitutional purposes deliberate indifference equates to criminal recklessness, see *Farmer v. Brennan*, 511 U.S. 825, 835–40 (1994), and the Justices deem criminal recklessness close enough to purpose or knowledge to be treated the same way as those forms of intent. See also *United States v. United States Gypsum Co.*, 438 U.S. 422, 443–46 (1978) (discussing the varieties of "intent" used in criminal law). Yet bad intent is not by itself a constitutional violation. No one is liable *for* recklessness (or purpose, or knowledge). Instead one is liable *for* an improper act or culpable omission committed *with* a specified mental state. Implementing a judicial decision is neither forbidden nor culpable, as far as the Constitution is concerned.

At oral argument counsel observed that *Malley v. Briggs*, 475 U.S. 335 (1986), allows someone who executes an invalid warrant to be held liable, if the error is so clear that only an incompetent or wicked person could fail to see it. *Id*. at 341. Search and arrest warrants, unlike criminal judgments, are not the result of adversarial presentations and cannot be appealed. A warrant is not the sort of "judgment" that prevents administrative officials from acting independently. Trooper Malley would not have violated any legal rule had he refrained from entering Briggs's home. Liability under *Malley* falls on the police who invade the suspect's privacy—or, in

*Malley* itself, on the officer whose affidavit led to the warrant—not on a clerk who failed to catch the warrant's invalidity. *Malley* does not support Sabo. The judgment that affected him could have been appealed, and that was his proper means of redress.

Counsel also pointed to medical-maltreatment and failure-to-protect cases under the Eighth Amendment, see *Farmer*, but that kind of liability does not arise from enforcing judicial orders. If, say, a judge orders a prison to medicate a prisoner to make him competent for trial, officials are not liable in damages for implementing that order, even if it is invalid, as it may well be. See *Sell v. United States*, 539 U.S. 166 (2003). The remedy is by appeal rather than a suit for damages against the physicians who administered the judicially ordered drugs.

To say that a violation of state law with deliberate indifference violates the Constitution is to say that an intentional violation of state law violates the Constitution. (If under *Farmer* deliberate indifference is the lowest tier of intent, the greater tiers—purpose and knowledge—must be equally bad or worse.) Yet the Supreme Court repeatedly declares that a violation of state law violates *only* state law, not the Constitution. See, e.g., *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Davis v. Scherer*, 468 U.S. 183, 192–96 (1984); *Nordlinger v. Hahn*, 505 U.S. 1, 16 n.8 (1992). Accord, *United States v. Caceres*, 440 U.S. 741 (1979) (same with a violation of a federal statute or regulation). See also, e.g., *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir. 1988) (en banc); *Thiele v. Illinois State University*, 35 F.4th 1064 (7th Cir. 2022).

Consider *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). A state court issued a restraining order. Colorado law requires

the police to enforce such orders. Plaintiff alleged that they intentionally refused to do so, leaving children defenseless against their murderous father. The Tenth Circuit held that deliberate (purposeful) non-enforcement, in violation of state law, deprived the order's beneficiaries (the children and their mother) of "property" and so violated the Constitution. The Justices reversed, holding that constitutional rights depend on federal rather than state statutes or judicial orders. They added that, even if Colorado law were understood to create a personal right to enforcement of protective orders, that would not permit a federal court to bootstrap the state-law violation into a constitutional violation. *Id*. at 763–67. I do not see how Sabo has a better constitutional theory than the one rejected in *Castle Rock*.

Or consider *Virginia v. Moore*, 553 U.S. 164 (2008). Virginia law requires police to issue a citation, rather than make a custodial arrest, for the misdemeanor of driving on a suspended license. Police officers stopped Moore for driving on a suspended license and arrested him so that they could search him. They found drugs, for which Moore was prosecuted. The Supreme Court of Virginia held that, by making a custodial arrest (unquestionably a purposeful step), the police had violated the Constitution. (That was an essential holding, because Virginia does not use the exclusionary rule to enforce state law.) Again the Supreme Court reversed, holding that a violation of state law is no more than a violation of state law. The Justices expressed concern in *Moore* that treating a state-law protection as a constitutional rule would do little but encourage the state to repeal any protections of liberty that go beyond the Constitution. Apart from all concerns about the wisdom of enforcing state law through the Constitution, the Court observed that these are different documents, with

different texts, histories, and requirements. For custodial ar-
rest the constitutional requirement is probable cause, unaf-
fected by how state law directs the police to proceed.

I'm not aware of any case in which the Supreme Court has
held that an intentional violation of state law violates the Con-
stitution, when the same conduct would satisfy constitutional
norms if state law were different. So if Wis. Stat. §973.09(2m)
had been repealed in 2016 and replaced by a statute providing
that administrative employees must implement all judicial
decisions as written, there could not be a plausible constitu-
tional claim against any of our defendants. This shows that
only a (potential) violation of state law is at stake in this suit.
See *Gordon v. Degelmann*, 29 F.3d 295, 300–01 (7th Cir. 1994).

The panel relied on *Figgs v. Dawson*, 829 F.3d 895 (7th Cir.
2016), which addresses a separate issue: whether state admin-
istrative officials can be liable for holding a prisoner in cus-
tody longer than authorized by the judgment of conviction.
The prisoner in *Figgs* took the judgment as a given and
blamed the defendants for miscounting good-time credits and
other statutory discounts, such as credits from other sen-
tences. Lots of decisions similarly find a problem under the
Due Process Clause or the Cruel and Unusual Punishments
Clause when, with intent (purpose, knowledge, or deliberate
indifference), an administrative official subjects a person to
longer custody than a judgment approves. It is quite some-
thing else to see a constitutional violation in holding a person
for the duration of a judgment that has not been reversed or
modified.

When a judgment is defective, any plausible constitutional
claim would be against state judges, who have absolute im-
munity. Sabo may have a claim under state law against the

administrative officials, but state-law duties cannot be enforced against states and their officials through awards of damages under §1983. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97–123 (1984); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). The claim against the four defendants in this suit, which depends entirely on §1983, fails under *Pennhurst* and *Will*. As far as constitutional law is concerned, the way to deal with an error in a judgment is to ask the judge to fix the problem and to appeal if the judge refuses, not to collect damages from administrative employees who take the judgment as a given.

LEE, *Circuit Judge*, joined by PRYOR, *Circuit Judge,* concurring. I agree with the majority opinion that Sheri Hicks and Debra Haley are entitled to qualified immunity as a matter of law. In my view, the rather atypical provision of Wisconsin law that appears to allow correctional officers to correct errors made by the sentencing judge in certain circumstances, *see* Wis. Stat. § 973.09(2m) (2003), is what makes this case materially different from our prior cases in this area. *See, e.g., Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001); *Figgs v. Dawson*, 829 F.3d 895 (7th Cir. 2016). But I do not believe the same can be said for the other two factors upon which the majority opinion relies—that Hicks and Haley lacked notice of the error affecting John Sabo's sentence and that the error extended Sabo's probation rather than incarceration.

First, the majority opinion states that Hicks and Haley "lacked notice of Sabo's erroneous sentence." But, Sabo's complaint alleges that Haley and Hicks learned that an error had unlawfully extended the probation terms of a large group of inmates. Thus, I take the majority opinion to mean that our prior cases have not clearly established what a correctional officer must do when she is confronted with a sentencing error affecting a large group, rather than a particular individual. With this I agree. However, to the extent that the majority opinion can be read to suggest that the source of the information matters (whether it came from other correctional staff, Sabo's attorney, or Sabo himself), such an interpretation would be incorrect. How Haley and Hicks obtained this knowledge has little to do with the extent of their knowledge. The Eighth Amendment deliberate indifference inquiry is focused on the latter, not the former. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (deliberate indifference requires "a showing that the official was subjectively aware of the risk").

Second, as the dissenting opinion explains, we have consistently maintained that probation and parole, like incarceration, are forms of custody for constitutional purposes. And *Hankins v. Lowe* establishes that "a state officer who unlawfully keeps a person in custody beyond the date at which he … is entitled to be released imposes a form of cruel and unusual punishment, and thus violates the Eighth Amendment." 786 F.3d 603, 605 (7th Cir. 2015).

JACKSON-AKIWUMI, *Circuit Judge*, joined by MALDONADO, *Circuit Judge*, dissenting. The Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, provides a "broadly construed" remedy against a state official's violation of federally protected rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700–01 (1978). The law "opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, 407 U.S. 225, 239 (1972).

My colleagues in the majority seek to constrain this remedy with an overly restrictive interpretation of what must be done to overcome qualified immunity. The majority would effectively require litigants—at the pleadings stage, no less—to establish not just that they seek to enforce a clearly established right but that the right has an almost perfect analog in existing case law. Here, that means that even though John Sabo was unlawfully held in custody and even incarcerated as a result, he cannot ask a factfinder to hold the responsible officials accountable. I cannot agree with such a narrow gateway for § 1983 litigants (or, conversely, such a wide window for defendants to avoid the specter of liability), so I dissent.

In Part I, I counter the majority's view of what plaintiffs must do to overcome the defense of qualified immunity, and I emphasize the low bar for plaintiffs to state a claim for relief. In Part II, I explain why the differences between this case and our existing precedents are slight ones that do not warrant granting Wisconsin state officials Sheri Hicks and Debra Haley qualified immunity at this juncture.

I.

To establish the affirmative defense of qualified immunity, defendants must demonstrate either that they did not violate a constitutional right or that the right was not clearly established at the time of the violation. *Taylor v. Barkes*, 575 U.S. 822, 824–825 (2015). For a right to be clearly established, a previous case "directly on point" is not required, *id.* at 825, though there must be a decision in a case similar enough to the case before the court that the defendants would have "fair notice" that they are acting unconstitutionally. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Today the majority concludes that Sabo, as plaintiff, needs to cite clearly established law "with much more specificity" than usual to show that qualified immunity does not apply. *Ante*, at 9. Precedent does not support this conclusion. The majority relies on *Mullenix v. Luna*, in which the Supreme Court observed that Fourth Amendment cases are so particularly fact-dependent that specificity is "especially important." 577 U.S. 7, 12 (2015). The *Mullenix* Court did not, as the majority suggests, impose a heightened standard for plaintiffs to overcome qualified immunity, let alone in an Eighth Amendment case. In support of this heightened standard, the majority also cites *Ziglar v. Abbasi*—again outside the Eighth Amendment context—in which the Supreme Court imported from *Mullenix* a need for factual specificity "with respect to abstract rights" when defining clearly established law. 582 U.S. 120, 151 (2017). Sabo's asserted right is far from abstract. The right not to be held in state custody for an

unlawfully long period as the result of deliberate indifference is specific and well-defined, as I explain below.[1]

Additionally, the majority acknowledges, *see ante*, at 5, but fails to apply, the principle that the defendants' assertion of qualified immunity does not increase Sabo's pleading standard. Sabo must provide only a "short and plain statement" of a plausible claim. FED. R. CIV. P. 8(a)(2); *see also Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). He need not anticipate nor overcome affirmative defenses like qualified immunity in his complaint. *Roldan*, 52 F.4th at 339.

Under these well-known pleading standards, Sabo adequately stated a claim. Taking his factual allegations as true, he was kept on probation for an unlawful period, and he was even incarcerated because he violated probation conditions that should have ended months earlier. Hicks and Haley were responsible for checking and revising sentences that did not comply with the law—state law, to be sure, but I will address that red herring separately. When they reviewed the sentence here, they were incorrect about what the law permitted for convictions like Sabo's. No one—Sabo included—considers this kind of mistake to violate the federal Constitution. But when Hicks and Haley learned that the law did not permit a category of sentences that they had approved in the exercise of their official duties, they were then certain that they had

---

[1] The majority proffers *Taylor v. Barkes* to suggest that the focus on factual particularity in *Mullenix* has appeared directly in the Eighth Amendment context. 575 U.S. 822 (2015). *Taylor*, however, offers only a standard definition of what "clearly established" means, does not cite *Mullenix*, and does not even imply a need for heightened factual specificity. *Id.* at 825–26.

failed to correct at least some overly long terms of probation. In other words, Sabo has pleaded, they had actual notice of this fact.

Hicks and Haley also had the ability, at a minimum, to notify someone of their error, and potentially could have personally discovered the names of probationers with unlawful sentences. (To assume their inability to do so is to draw inferences in the defendants' favor rather than Sabo's.) What they did instead was nothing at all: They consciously disregarded a known risk that one or more persons who had served out a full sentence remained in the custody of the state with liberty significantly curtailed.

These allegations state a claim that the defendants violated Sabo's rights under the Eighth Amendment (a finding the majority opinion avoids but casts serious doubt on). And these allegations describe a violation of a clearly established right. Sabo's account of the facts warrants at least discovery to uncover the context for Hicks and Haley's failure to act.

## II.

Our decision in *Figgs v. Dawson*, 829 F.3d 895 (7th Cir. 2016), should govern this case, and it demands that we deny qualified immunity at this point. Although we decided *Figgs* after the relevant event in this case (Hicks and Haley's discovery of their error in 2005), our decision did not break new ground. The cases we relied on in *Figgs* were decided before 2005: *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), and *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985). They articulated the point that officials responsible for release dates cannot bury their heads in the sand once alerted that someone—anyone—is in state custody without justification under state

law. This duty, I emphasize, does not apply to all state actors, but only to the officials with the power to give or take away citizens' liberty. Those officials can include an administrator within a prison who must take seriously a credible complaint that a person has been detained beyond his release date. Or it could be someone in the unique position that Wisconsin law placed Haley and Hicks, who could, according to the complaint, unilaterally correct a sentence without input from or action by a judge.

The state prisoner in *Sample* twice told a records officer that he should not be in prison. 885 F.2d at 1104. That officer failed to fully investigate the claim or tell anyone about the prisoner's assertion until he had spent nine extra months in prison. *Id.* at 1104–05. On these facts, the Third Circuit determined that the district court did not err in concluding that this officer was deliberately indifferent to the prisoner's risk of serving an unlawfully long prison term. *Id.* at 1111. In *Haygood*, the state prisoner wrote a letter to the warden questioning whether two of his sentences could legally run consecutively and was informed that his sentence was correct. 769 F.2d at 1353. Only later was it discovered that his sentences should have been concurrent. *Id.* The Ninth Circuit agreed with the district court's determination that the failure of the warden's office even to investigate the prisoner's claim would allow a reasonable jury to conclude that those officials displayed deliberate indifference. *Id.* at 1355.

Our circuit relied on these sound decisions when we concluded that the record office supervisor in *Figgs* was not entitled to qualified immunity. We explained that it was clearly established that a "failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence

violates the Eighth Amendment *if it is the result of indifference*."
*Figgs*, 829 F.3d at 906 (emphasis added) (citation omitted). I
stress that this right is both clearly established and concrete—
not, as the majority asserts without explanation, abstract.
*Ante*, at 10.

So what has changed? Sabo, too, alleges that correctional
officials with the power and responsibility to correct unlawful
sentence lengths received concrete information that some sen-
tences under their purview were unlawfully long. They ig-
nored this information. It remains to be seen, after discovery,
whether this resulted from deliberate indifference, but for
now Sabo gets the benefit of the doubt based on pleading a
plausible claim.

My colleagues identify three characteristics that, they say,
make Sabo's complaint so different from every previous case
that the defendants here could not have been on notice that
their inaction after learning of their legal error violated the
Constitution. These differences, while present, are superficial
and do not make the principle at issue any less "established."

The first distinguishing characteristic the majority cites is
the particularized notice that the defendants had in prior
cases. In *Figgs*, for example, the state prisoner filed a grievance
and wrote letters explaining why his sentence was improperly
calculated. The same is true in *Haygood* and *Sample*—the state
prisoner in each case told correctional officials that his sen-
tence was too long. Sabo, however, did not inform Hicks and
Haley that his sentence was unlawfully long, nor did anyone
inform them on his behalf.

But Hicks and Haley had notice of the essential fact that
some people received unlawfully long probation sentences.

That sufficed to alert them to a need for investigation, even if it was not specific enough information to allow them to correct Sabo's sentence instantly. Indeed, what the majority portrays as a defect of notice is really a matter of what the correctional officials had to do upon receiving notice. The defendants in *Figgs*, *Haygood*, and *Sample* knew who had complained about their sentence, to be sure, but still they needed to investigate to discover whether the complaints had any merit. Hicks and Haley—or officials they could have advised of the problem—also would need to investigate, but they knew already that meritorious claims existed. And Sabo argues only that Hicks and Haley had to do something, not that they personally had to identify each unlawful sentence. (To the extent that the majority assumes that this endeavor would involve searching for proverbial needles in a haystack, nothing in the pleadings supports an inference against Sabo that the task would be exceptionally cumbersome.)

The second difference that the majority considers material relates to causation. The majority points out that Hicks and Haley did not cause the error in Sabo's sentence, unlike the defendants in *Figgs*, for example, who miscalculated the state prisoner's release date. To impute liability to correctional officers for a judge's error, the majority worries, would place those officers in a "precarious position." *Ante*, at 14.

This line of argument mistakes what it means for an official to be "responsible" for an unlawful sentence. In *Figgs*, *Haygood*, and *Sample*, the courts located the defendants' responsibility not in having *caused* the erroneous release date, but in their ability to *rectify* it. *Figgs*, 829 F.3d at 903–04 (noting that the record office supervisor was the only one with sufficient information to recalculate Figgs's release date); *Haygood*,

769 F.2d at 1359 (identifying a responsible official as one with "authority to rectify an erroneous practice"); *Sample*, 885 F.2d at 1115–16 (noting the defendants' obligation to refer the matter to someone with authority to resolve the controversy). Applying this principle, Hicks and Haley—who had a final and unilateral say over probation sentences, according to the complaint—are "responsible" officials irrespective of who was at fault for the initial error. The focus is on Hicks and Haley's own errors, not those of someone "outside of [their] supervisory purview" as the majority contends. *Ante*, at 15 n.6.

Further, to the extent such a policy consideration is appropriate, the majority's concern about placing correctional officials in a difficult spot is inapt. There is no danger that Hicks and Haley, or those in their position, would risk any precarity. State law specifically empowered them to correct a judge's order; that is, to choose between obeying state sentencing law as written or abiding by a judge's order even if incorrect. The "precarity" is baked into the job description. If we have never found a record keeper responsible for rectifying a judge's sentencing error, it is because we have never encountered Wisconsin's system of allowing non-judges such authority. That is no reason to depart from clearly established principles and hold that the nature of the system immunizes responsible parties from constitutional liability for deliberate indifference.

The final characteristic the majority insists separates Sabo's case from previous cases is his sentence of probation rather than imprisonment. As the majority sees it, that difference renders previous cases too dissimilar to establish the principle at issue here. The majority characterizes the risk for Sabo as "a level removed" because Hicks and Haley's error

condemned him to an unlawfully long term of probation, not imprisonment. *Ante*, at 16.

Long before 2005, the Supreme Court understood, and we agreed, that probation and parole are forms of custody. *See Morrissey v. Brewer*, 408 U.S. 471, 483 (1972); *Drollinger v. Milligan*, 552 F.2d 1220, 1224 (7th Cir. 1977). It follows, of course, that keeping someone on probation for an unlawfully long period is an Eighth Amendment violation if the defendant acts with deliberate indifference. *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). It is certainly not "clearly established" that there are tiers of state custody, only some of which the Eighth Amendment protects. And here, Sabo was in fact incarcerated, rendering the distinction even more artificial.

What are the consequences of the analytical framework the majority has adopted? Using such slight distinctions between Sabo's allegations and the prior cases to deny that the constitutional right in this case is clearly established prevents plaintiffs from enforcing their rights in all but the most oft-repeated scenarios. Yet the Supreme Court has consistently reminded us that it "is not necessary, of course, that the very action in question has previously been held unlawful" and that "an officer might lose qualified immunity even if there is no reported case directly on point." *Ziglar*, 582 U.S. at 151 (cleaned). Viewing the slight distinctions between Sabo's allegations and the prior cases as dispositive differences does nothing to ensure that defendants are on notice of their constitutional obligations. *See* Joanna C. Schwartz, *Qualified Immunity's Boldest Lie*, 88 U. CHI. L. REV. 605, 610 (2021) (showing that officers are not trained to make decisions based on granular factual scenarios, but on broad principles).

Further, the early stage of the proceedings in this case
makes the majority's narrow definition of "clearly estab-
lished" even more burdensome. To avoid dismissal, need a
plaintiff map his factual assertions wholesale onto those de-
scribed in prior judicial decisions? We seem close to imposing
such a requirement. (The majority insists that this case does
not closely depend on factual determinations, making it
proper to address qualified immunity at the pleadings stage,
but this is belied by its reliance on factual distinctions to show
that this case is purportedly unlike any other.)

There are sound reasons, which I need not repeat here,
why courts ought not to decide most affirmative defenses,
and especially qualified immunity, on the pleadings. *Roldan*,
52 F.4th at 339. Although untimeliness, for example, can be
evident from the face of a pleading, qualified immunity, with
its fact-specific nature, is different. The Supreme Court's in-
struction to decide immunity "at the earliest possible stage in
the litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), can-
not mean we should reject a plaintiff's well-pleaded com-
plaint, much less raise the pleading standard to do so.

Separate from the question of whether the right we have
all been discussing is "clearly established," there is obviously
the question of whether the right exists at all. That matter
ought to be settled. We have frequently decided that a defend-
ant's actual notice of a group of prisoners at risk of a constitu-
tional violation creates an obligation to do something to pre-
vent it, if in the position to do so. *See, e.g.*, *Brown v. Budz*, 398
F.3d 904, 915 (7th Cir. 2005); *Delaney v. DeTella*, 256 F.3d 679,
686 (7th Cir. 2001). Here too, Hicks and Haley had notice that
a group of people in state custody were at risk of a constitu-
tional violation and, though Hicks and Haley were able to

take action to abate the risk, they did not. It is not clear why the standard widely used in other prison contexts would not also apply here.[2] Correctional officials in records departments, like their counterparts within prisons, are accountable when they turn a blind eye to constitutional violations that they are informed of and have the power to correct.

In deciding that Hicks and Haley are entitled to qualified immunity before any facts are developed, the majority simultaneously (1) requires Sabo to assert a right with too much granularity and (2) prevents him from acquiring enough facts to satisfy the majority's narrower formulation of the right. (For all we know, Hicks and Haley had a spreadsheet with the names of all affected probationers; only discovery would reveal this.) The majority's moves restrain the practical availability of a remedy under § 1983 by expanding the textually untethered defense of qualified immunity.[3] This, in turn,

---

[2] The concurrence by Judge Easterbrook suggests that job duties do not create constitutional obligations. *Ante*, at 17–18. But no one is trying to make a federal case out of poor job performance. Sabo is not alleging the approval of his sentence was the culpable act. Instead, he has identified an undisputed constitutional violation—an unlawfully long term of state custody—and he claims that Hicks and Haley acted with deliberate indifference to the risk of that violation. Hicks and Haley's job responsibilities are important only because they establish their power to remedy the unlawful sentence, not because those duties determine the Eighth Amendment standard. Considering job responsibilities when assessing the appropriate defendants for a § 1983 suit is a routine practice. *See, e.g.*, *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 632–33 (7th Cir. 2017); *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015).

[3] For a succinct history of § 1983 and qualified immunity, including the fact that qualified immunity appears nowhere in the text of § 1983, any

dilutes the statute's ability to "interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Mitchum*, 407 U.S. at 242.

I would vacate the district court's dismissal of Sabo's deliberate indifference claim against Hicks and Haley. I respectfully dissent.

---

other statute, or the Constitution, see the opinion by Judge Carlton W. Reeves in *Green v. Thomas*, 734 F. Supp. 3d 532, 543–48 (S.D. Miss. 2024). For a discussion about the future of qualified immunity, see *id.* at 560–68.